UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
YENSY CONTRERAS, Individually, and on   :
Behalf of All Others Similarly Situated,    :     Case No.: 1:21-cv-09096-VSB
                                          :
              Plaintiff,        :
                                          :
              v.           :
                                          :
TD ASSOCIATES, LLC,           :
                                          :
              Defendant.      :
-------------------------------------------------------------x

**Defendant's Motion to Dismiss**
**And Supporting Memorandum**

## Table of Contents

Table of Authorities ................................................................................................ ii

Motion to Dismiss ................................................................................................... 1

Background .............................................................................................................. 2

Argument ................................................................................................................. 5

    I.     This Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks Standing ................................................................................................. 5

    II.    This Court Lacks Personal Jurisdiction Over TackleDirect Under New York's Long Arm Statute and the Due Process Clause ...................... 11

    III.   This Court Should Dismiss Plaintiff's ADA Claim Because Plaintiff Did Not Seek an Accommodation and a Website is not a Place of Public Accommodation. ...................................................................... 16

        A.    Plaintiff Did Not Notify TackleDirect of his Claimed Disability and Seek an Accommodation under the ADA Before Filing Suit .... 17

        B.    A Website Is Not a Place of Public Accommodation under the ADA .................................................................. 18

    IV.   This Court Should Decline Supplemental Jurisdiction over Plaintiff's State and Local Claims. ................................................................... 22

Conclusion ......................................................................................................... 22

## Table of Authorities

**Cases**

*American Girl, LLC v. Zembrka*, 2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021) ................ 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 16

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) .................................................. 9

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ............................................... 12, 13

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ........................................ 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................................................ 13, 15

*Castillo v. Hudson Theater, LLC*, 412 F. Supp. 3d 447 (S.D.N.Y. 2019) ................................. 17

*Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. June 4, 2019) ................................. 5, 9, 11, 12

*Dominguez v. Grand Lux Café LLC*, 2020 WL 3440788 (S.D.N.Y. June 22, 2020) ................... 9

*Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977 (S.D.N.Y. July 6, 2020) ................... 9

*Ford Motor Co. v. Mont. Eighth Jud. Distr. Ct.*, 141 S. Ct. 1017 (2021) ............................ 14, 15

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) ................................................... 19

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 911th Cir.),
    *vacated as moot*, 21 F.4th 775 (11th Cir. 2021) ..................................................................... 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................................. 12

*Hanson v. Denckla*, 357 U.S. 235 (1958) .................................................................................... 15

*Johnson v. TheHuffingtonPost.com, Inc.*, 2021 WL 6070559 (5th Cir. Dec. 23, 2021) ....... 15, 16

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) ............................................. 6

*Krist v. Kolombos Rest. Inc.*, 688 F.3d 89 (2d Cir. 2012) .......................................................... 18

*Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) ................... *passim*

*Lopez v. Jet Blue Airways*, 662 F.3d 593 (2d Cir. 2011) ............................................................ 18

*Lopez v. Peapod, LLC*, 2021 WL 1108559 (S.D.N.Y. Mar. 23, 2021).......................................... 5

*Lopez v. W. Elm, Inc.*, 2020 WL 6546214 (S.D.N.Y. Nov. 6, 2020).......................................... 18

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................................. 5

*Martinez v. MyLife.com, Inc.*, 2021 WL 5052745 (E.D.N.Y. Aug. 16, 2021).................... 19, 21

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009) ................................. 17

*Mendez v. Apple Inc.*, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) ................................. 5, 6, 7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ............................... 11

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999) ......................................... 21

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) .................................... 11

*Quezada v. U.S. Wings, Inc.*, 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021) ........................ 10, 12

*Robles v. Domino's Pizza LLC*, 913 F.3d 898 (9th Cir. 2019)................................................... 19

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460 (S.D.N.Y. 2012)......... 17

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) ................................. 11

*Southern Oil of La., Inc. v. Saberioon*, 2021 WL 5180056 (S.D.N.Y. Nov. 8, 2021) .... 11, 12, 13

*Starmedia Network, Inc. v. Star Media, Inc.*, 2001 WL 417118 (S.D.N.Y. Apr. 23, 2001) ...... 13

*Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580 (6th Cir. 1995) ........................... 20

*Suris v. Gannett Co.*, 2021 WL 2953218 (E.D.N.Y. July 14, 2021) .......................................... 18

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................... 13, 14, 15

*Winegard v. Newsday*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) ........................... 19, 20, 21

**Statutes**

35 N.Y. C.P.L.R. § 302(a)........................................................................................................... 12

28 U.S.C. § 1337(c) ............................................................................................................... 2, 22

42 U.S.C. § 12181 ........................................................................................................ 1, 19

42 U.S.C. §§ 12181(7)(A)-(L) .................................................................................... 18, 21

42 U.S.C. § 12182(a) .............................................................................................. 2, 17, 18


## Other Authorities

Julia N. Sarnoff and John W. Egan, *Forum Shopping for a Website Lawsuit Over the
    Holidays? Look No Further than the SDNY*, ADA Title III News & Insights (Dec. 21,
    2021), https://www.adatitleiii.com/2021/12/forum-shopping-for-a-website-
    lawsuit-over-the-holidays-look-no-further-than-the-sdny/ ...................................... 3

## Rules & Regulations

28 C.F.R. § 36.104, Appendix C ................................................................................. 18

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 5, 6, 10

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 11, 16

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 16, 22

## Constitutional Provisions

U.S. Const. Art. III, § 2 ............................................................................................. 6

**Motion to Dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Defendant TD Associates LLC (TackleDirect) moves to dismiss the First Amended Complaint (FAC), ECF No. 18, for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. This motion is supported by the declaration of Thomas Gill (Gill Dec.), ECF No. 20, submitted in support of the motion to dismiss the original complaint (Compl.), ECF No. 1, and the accompanying supplemental declaration of Thomas Gill (Gill Supp. Dec.), which addresses the minor factual tweaks Plaintiff Yensy Contreras added in the First Amended Complaint. *Compare* Compl. ¶¶ 2–3, 20, 22–24 *with* FAC ¶¶ 2–3, 20, 22–24.

*First*, this Court lacks subject matter jurisdiction because Plaintiff lacks Article III standing to sue TackleDirect—he failed to assert a sufficiently concrete and particularized injury; TackleDirect addressed the minor website accessibility issues alleged in the FAC, and thus the claimed discriminatory treatment is unlikely to continue; and Plaintiff failed to allege sufficient facts to reasonably infer that he has an intent to return to TackleDirect's website. *Second*, this Court lacks personal jurisdiction over TackleDirect because operating a website visible anywhere in the world is not transacting business in New York, and because assertion of jurisdiction based simply on Plaintiff's viewing TackleDirect's website in New York would violate the Due Process Clause. *Third*, Plaintiff fails to state a claim against TackleDirect under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.*, based on the alleged (and disputed) inaccessibility

of its website because Plaintiff never notified TackleDirect of his alleged disability and sought an accommodation, and because a website is not a "place of public accommodation" under 42 U.S.C. § 12182(a). If the Court dismisses Plaintiff's federal claim for failure to state a claim, it then should decline to exercise supplemental jurisdiction over Plaintiff's state and local claims pursuant to 28 U.S.C. § 1337(c).

## Background

Plaintiff Yensy Contreras states that he is a blind, visually-impaired, handicapped person, and brings this lawsuit, on behalf of himself and all others similarly situated, against Defendant TD Associates LLC (TackleDirect) based on the alleged inaccessibility of its website, www.tackledirect.com. FAC ¶ 1. Plaintiff claims that he visited the website because it offered or sold "fishing equipment." *Id*. ¶ 2. According to Pacer, this is one of 146 lawsuits Plaintiff has filed in this district, beginning in November 2021. About 50 of those lawsuits have been filed since TackleDirect filed its motion to dismiss the original complaint. As set forth in the accompanying Appendix, on the same day that Plaintiff sued TackleDirect, Plaintiff sued 19 other companies, claiming in virtually identical complaints that their websites also were inaccessible. These companies offered or sold a wide array of services and goods, from "insulated bike and sport water bottles" to "different resort experiences" to "different hair care products for natural hair," and more. According to a legal blog that follows these types of cases, this is one of over 400 lawsuits Plaintiff's counsel have filed in this district in last quarter of 2021. Julia N. Sarnoff and

John W. Egan, *Forum Shopping for a Website Lawsuit Over the Holidays? Look No Further than the SDNY*, ADA Title III News & Insights (Dec. 21, 2021), https://www.adatitleiii.com/2021/12/forum-shopping-for-a-website-lawsuit-over-the-holidays-look-no-further-than-the-sdny/.

TackleDirect is a family-owned business located in Egg Harbor Township, New Jersey, which sells fishing gear, accessories, and apparel through a single store on the Jersey shore, through its toll-free telephone number, and through its website. Gill Dec. ¶¶ 3–4, 11–16. It does not have any real or personal property in New York, does not have any employees in New York, and does not target its website, business solicitations, marketing, or advertising efforts to New York. *Id*. ¶¶ 5–10.

Because it is good for business, TackleDirect aims to make its website accessible to all individuals, including blind, visually-impaired, handicapped people. *Id*. ¶¶ 17–19, 32. TackleDirect encourages customers and potential customers to contact its customer service if they experience accessibility issues; needless to say, TackleDirect has no record of Plaintiff ever alerting TackleDirect about any alleged accessibility issues (or ever purchasing a product, sending an email, engaging in a chat, or even visiting the website). *Id*. ¶¶ 19–20; Gill Supp. Dec. ¶¶ 20–21. Just like TackleDirect's non-disabled customers or potential customers, Plaintiff could have contacted TackleDirect through its toll-free number if he had any questions or problems with the website. Gill Supp. Dec. ¶ 21. For several years TackleDirect has worked with an accessibility consultant to make its

website even more accessible, and it is planning on rolling out a new, even better, website in 2022. Gill Dec. ¶¶ 21–24, 32.

Meanwhile, for the three vague issues raised by Plaintiff in his original complaint, TackleDirect disputes that any of them are plausible accessibility issues, but nonetheless worked immediately with its accessibility consultant to address each claimed issue. *Id*. ¶¶ 25–30. In these types of ADA website accessibility cases, the plaintiffs' response to a motion to dismiss inevitably is to amend the complaint to try to add to their original barebones allegations. So, too, here.

In response to the motion to dismiss, Plaintiff alleges a handful of additional problems he claims to have encountered, FAC ¶¶ 2, 20, and in each case, TackleDirect investigated them, concluded that they did not pose a barrier, but nevertheless made additional changes to address any possible concerns. Gill Supp. Dec. ¶¶ 7–17. Indeed, TackleDirect does not even sell the product Plaintiff claims he was interested in, and TackleDirect's accessibility consultant could not recreate any accessibility problem in following the checkout path for the most analogous product.  Gill Supp. Dec. ¶¶ 18–20. In sum, TackleDirect has tried to address—and has succeeded in addressing—every alleged accessibility issue raised by Plaintiff in his two complaints.

Against this mosaic, we turn to TackleDirect's motion to dismiss.

## Argument

### I.    This Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks Standing.

When presented with multiple grounds for dismissal, "the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action." *Lopez v. Peapod, LLC*, 2021 WL 1108559, *3 (S.D.N.Y. Mar. 23, 2021) (ADA accessibility claim) (quotation omitted). We therefore begin with Plaintiff's lack of standing.

"Courts may dismiss an otherwise sufficient complaint for a lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Diaz v. Kroger Co.*, 2019 WL 2357531, *2 (S.D.N.Y. June 4, 2019) (same Plaintiff's counsel) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving that it exists by a preponderance of the evidence." *Mendez v. Apple Inc.*, 2019 WL 2611168, *1 (S.D.N.Y. Mar. 28, 2019) (same Plaintiff's counsel) (citation omitted). Although the Court must accept as true all material factual allegations in the complaint, "a court may not premise jurisdiction on favorable inferences drawn from the pleadings." *Kroger*, 2019 WL 2357531, at *2 (citation omitted). "Instead, a plaintiff must show by a preponderance of the evidence that subject matter jurisdiction lies over the dispute." *Id*. (citation omitted). "When deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the complaint." *Id*. (citation omitted).

"To survive a defendant's Rule 12(b)(1) motion to dismiss, a plaintiff must allege facts that affirmatively and plausibly suggest that he or she has standing to sue." *Apple*, 2019 WL 2611168, at *1 (citation omitted). "That is because under Article III of the Constitution, federal courts can resolve only 'cases' and 'controversies.'" *Id*. (citing U.S. Const. art. III, § 2). "To establish standing a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Apple*, 2019 WL 2611168, at *1 (quotation omitted).

"A plaintiff satisfies standing requirements to bring suit under Title III of the ADA only 'where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location.'" *Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735, *3 (S.D.N.Y. Mar. 8, 2021) (ADA accessibility claim) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)). Plaintiff cannot satisfy *any* of these three requirements.

"There are no injuries in fact pleaded because the purported injuries described lack all the requisite specificity." *Apple*, 2019 WL 2611168, at *2. In his original complaint filed on *November 3, 2021*, Plaintiff alleged only that he visited TackleDirect's website in *November 2021*. Compl. ¶ 2. After this was pointed out in the motion to dismiss, Plaintiff

asserted instead that he first visited TackleDirect's website in late October 2021. FAC ¶ 2. Also, after TackleDirect declined to settle this case immediately, Plaintiff claims to have visited the website several more times, FAC ¶¶ 2, 22; Gill Supp. Dec. ¶ 18, although he asserted in his original complaint that he only intended to return to the website when the alleged accessibility problems were cured. Compl. ¶ 24. In the First Amended Complaint, Plaintiff finally identifies the product he claims to be interested in, FAC ¶¶ 2-3, 24, but TackleDirect does not sell that product, and there were no accessibility issues in the checkout path for the closest equivalent. Gill Supp. Dec. ¶ 20.

Plaintiff does not identify what sections of the website he tried to access but could not. Finally, while general barriers are listed, he does not allege which one of them prevented him from accessing the website or purchasing the product he sought. He does not allege that he brought any of the claimed barriers to the attention of TackleDirect or sought any accommodation from TackleDirect. *Cf. Apple*, 2019 WL 2611168, at *2 (finding such general allegations insufficient to allege an injury-in-fact).

Although Plaintiff generically asserts that TackleDirect's website is inaccessible like he does in his 145 other lawsuits (and the lawsuits filed since TackleDirect's original motion to dismiss contain no more detail that the complaint in this case), the Court should not give such conclusory labels any credence. *See Arby's*, 2021 WL 878735 at *4 ("There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if

7

the harms to be remedied do exist and are indeed identical. But those who live by the photocopier shall die by the photocopier.") (quoting *Apple*, 2019 WL 2611168, at *4).

Plaintiff's additional allegations in the First Amended Complaint likewise fail. As TackleDirect's co-founder and managing member explains in great detail, these allegations generally do not make sense or contain enough detail to explain how they render TackleDirect's website inaccessible. Gill Supp. Dec. ¶¶ 7–16. TackleDirect's accessibility consultant often could not recreate the generic problems asserted by Plaintiff (or concluded that any such problems likely resulted from Plaintiff's use of an unlicensed screen reader). *Id.* To repeat, none of these alleged problems was brought to the attention of TackleDirect by Plaintiff, and Plaintiff never sought any form of accommodation from TackleDirect. Gill Supp. Dec. ¶¶ 22–23. Nevertheless, TackleDirect straightaway worked with its accessibility consultant to further improve its website concerning each of these alleged issues, and believes that it has addressed all of Plaintiff's specific (unfounded) concerns. *Id.* ¶¶ 7–16. Moreover, TackleDirect has no intention of reversing or abandoning these improvements. *Id.* ¶ 17.

TackleDirect's immediate response to Plaintiff's alleged concerns eviscerates the second requirement to obtain standing in an ADA case, namely, that the alleged discriminatory treatment will continue. *See Arby's,* 2021 WL 878735, at *3**.** In addition to addressing Plaintiff's specific issues, TackleDirect is committed to making its website accessible because it is good for business, has improved its accessibility in numerous

respects, and intends to introduce a new website in 2022. Gill Dec. ¶¶ 18–19, 21–24, 33;

Gill Supp. Dec. ¶ 23. This stands in sharp contrast to Plaintiff's vague allegations that he

visited TackleDirect's website and encountered accessibility issues. *Cf. Kroger*, 2019 WL

2357531, at *3–4 (relying upon company affidavit to find company corrected alleged

accessibility issues and thus plaintiff lacked standing).

Of the three requirements to assert standing, courts most frequently find in these

types of ADA cases that the plaintiff fails to satisfy the third requirement for standing,

namely, a reasonable inference of the plaintiff's intent to return to the currently

inaccessible place of public accommodation. *See Arby's*, 2021 WL 878735, at *3–4

(collecting cases). "In order to obtain injunctive relief, a plaintiff cannot rely on a past

injury alone but must demonstrate that she is likely to be harmed again in the future in a

similar way." *Id*. at *3 (quotations omitted).

"Intent to return is a 'highly fact-sensitive inquiry.'" *Dominguez v. Grand Lux Café

LLC*, 2020 WL 3440788, *3 (S.D.N.Y. June 22, 2020) (ADA accessibility claim) (quoting

*Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015)) (other citation omitted).

"To establish this factor, '[t]he plaintiff must allege specific facts that show a plausible

intention or desire to return to the place but for the barriers to access.'" *Arby's*, 2021 WL

878735, at *3 (quoting *Grand Lux Café*, 2020 WL 3440788, at *3). "Merely asserting an intent

to return to the place of injury some day, when the alleged barriers have been rectified,

is insufficient." *Arby's*, 2021 WL 878735, at *3 (quoting *Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977, *2 (S.D.N.Y. July 6, 2020)).

Plaintiffs broadly claims that he is "highly interested in purchasing the fishing equipment offered by Defendant, specifically the Shimano FI Spinning Reel" (which TackleDirect does not sell), and that he "intends to return to the website in order to transact business there as soon as the accessibility barriers are cured." FAC ¶ 24. However, "courts need not credit a complaint's conclusory statements without reference to its factual context." *Arby's*, 2021 WL 878735, at *3 (quotations omitted). "The Second Circuit and other courts have failed to find a sufficient intent to return even in cases where plaintiffs had pled far more specific allegations than what Plaintiff has done here." *Id.* (citing cases).

Quite simply, Plaintiff's "complaint does not offer sufficient non-conclusory factual allegations to establish an intent to return." *Id.* at *4 (quotation omitted). To be sure, some outlier courts in this district have largely relied on a plaintiff's say-so to conclude that the plaintiff had standing to assert an ADA website accessibility claim. *See, e.g., Quezada v. U.S. Wings, Inc.*, 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021) (same Plaintiff's counsel). But the consensus approach, as reflected by this Court's ruling in *Arby's*, dictates otherwise. "Plaintiff's boilerplate, cut-and-paste, fill-in-the-blanks Amended Complaint does not provide enough specificity to satisfy the requirements for standing under the ADA." *Arby's*, 2021 WL 878735, at *4.

10

Because the same standing requirements apply to Plaintiff's state and local claims, Plaintiff also lacks standing to assert his state and city claims. *Id*. In sum, Plaintiff's entire First Amended Complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II.   This Court Lacks Personal Jurisdiction Over TackleDirect Under New York's Long Arm Statute and the Due Process Clause.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Southern Oil of La., Inc. v. Saberioon*, 2021 WL 5180056, *2 (S.D.N.Y. Nov. 8, 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)) (other citation omitted). "A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) 'bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *Southern Oil*, 2021 WL 5180056, *2 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)) (other citation omitted). "Prior to an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction exists." *Southern Oil*, 2021 WL 5180056, *2 (citations omitted). "Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings." *Kroger*, 2019 WL 2357531, at *5 (citation omitted).

"Whether a foreign defendant can be sued in a federal court 'is determined in accordance with the law of the state where the court sits, with federal law entering the

picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'" *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (other citation omitted). "In assessing whether personal jurisdiction exists, courts engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *Southern Oil*, 2021 WL 5180056, at *4 (citations omitted).

There is no doubt that TackleDirect, a New Jersey limited liability company with its headquarters and principal place of business—indeed, its *only* place of business—in New Jersey, *see* Gill Dec. ¶¶ 4, 11–12, is not subject to general jurisdiction in New York. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("the paradigm forum for the exercise of general jurisdiction … for a corporation … is … one in which the corporation is fairly regarded as at home") (ellipses added).

This leaves specific jurisdiction. New York's long-arm statute, 35 N.Y. C.P.L.R. § 302(a), does not reach to the limits of the Due Process Clause. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007). Plaintiff's counsel has previously asserted in these types of cases that the Court has personal jurisdiction because the defendant "transacts any business" in New York. *See* 35 N.Y. C.P.L.R. § 302(a)(1); *cf. Kroger*, 2019 WL 2357531, at *5–7 (finding no personal jurisdiction); *U.S. Wings*, 2021 WL 5827437, at *6–7 (finding personal jurisdiction). "Therefore, a court has to determine (1) whether the defendant

12

transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *U.S. Wings*, 2021 WL 5827437, at *6 (cleaned up) (quotation omitted).

Simply operating a website that can be accessed anywhere in the world is insufficient to establish that TackleDirect is transacting business in New York.

> While there is some contrary authority within the District, several other judges in the District have reached the same conclusion as the Court does here, and have held that simply operating a website, absent more, is insufficient to establish that Defendants "transact business" in New York within the meaning of C.P.L.R. § 302(a)(1) sufficient to subject a defendant to jurisdiction in New York.

*American Girl, LLC v. Zembrka*, 2021 WL 1699928, *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases); *see also Best Van Lines*, 490 F.3d at 350 ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.") (quoting *Starmedia Network, Inc. v. Star Media, Inc.*, 2001 WL 417118, *3 (S.D.N.Y. Apr. 23, 2001)).

The critical element that is missing is any purposeful activity by *TackleDirect* to target or aim its website at potential New York customers. *See also Best Van Lines*, 490 F.3d at 246 ("New York courts define transacting business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (cleaned up) (citations omitted). In other words, "[i]t is 'insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts" or on the "unilateral activity" of a plaintiff'

with the forum to establish long-arm/specific jurisdiction." *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In short, absent some action taken by TackleDirect to specifically target New York with its website, Plaintiff cannot establish that TackleDirect "transacts business" in New York for the purposes of personal jurisdiction. *See American Girl*, 2021 WL 1699928, at *7.

Because Plaintiff cannot establish that the Court has personal jurisdiction under New York's long-arm statute, we need not consider the second requirement to establish personal jurisdiction, namely, that the assertion of such jurisdiction comports with due process. Nevertheless, it should be apparent that jurisdiction based solely on Plaintiff's unilateral access to TackleDirect's website in New York would violate the Due Process Clause.

The Supreme Court twice has declined to establish the limits of specific jurisdiction created solely through internet contacts. *Cf. Ford Motor Co. v. Mont. Eighth Jud. Distr. Ct.*, 141 S. Ct. 1017, 1028 n.4 (2021) ("And we do not here consider internet transactions, which may raise doctrinal questions of their own."); *Walden*, 571 U.S. at 290 n.9 ("[T]his case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State."). Still, recent caselaw strongly suggests that Plaintiff's personal jurisdiction theory—allowing suit

14

anywhere any person encounters any website accessibility issue—would violate TackleDirect's right to due process.

The Supreme Court has repeatedly required the contact with the forum be the result of the defendant's actions, and not the unilateral actions of the plaintiff. The defendant must "purposefully avail itself of the privilege of conducting activities in the forum State." *Ford Motor*, 141 S. Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's ties to the forum, in other words, must be ties that "the defendant *himself*" purposefully forged. *Walden*, 571 U.S. at 284 (emphasis added by Court and quoting *Burger King*, 471 U.S. at 475). Furthermore, "[t]he plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum." *Ford Motor*, 141 S. Ct. at 1025 (collecting cases).

"What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy.... When there is no such connection, specific jurisdiction is lacking *regardless of the extent of a defendant's unconnected activities in the State.*" *Id.* (quotation omitted and ellipsis and emphasis added). Thus, it does not matter one whit that TackleDirect sells products to New York citizens—Plaintiff's claim concerns TackleDirect's website, not its products. *See Goodyear*,

564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Reading these cases together leads inevitably to the conclusion that the Fifth Circuit recently reached: "Accessibility alone cannot sustain our jurisdiction. If it could, lack of personal jurisdiction would be no defense at all." *Johnson v. TheHuffingtonPost.com, Inc.*, 2021 WL 6070559, *4 (5th Cir. Dec. 23, 2021). As that court explained, if a defendant could be sued anywhere its website could be accessed, that would eliminate the distinction between general and specific jurisdiction, and allow any website operator to be sued anywhere. *Id.* at *7–8. And that would violate the Due Process Clause.

In sum, Plaintiff's complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### III.   This Court Should Dismiss Plaintiff's ADA Claim Because Plaintiff Did Not Seek an Accommodation and a Website is not a Place of Public Accommodation.

Even if Plaintiff has standing to assert his claims, and even if this Court has specific personal jurisdiction over TackleDirect, dismissal would still be warranted because Plaintiff fails to state a claim for relief under the ADA. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)**,** "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Treating Plaintiff's factual allegations as true for purposes of this motion, the Court's standard still demands "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* "A complaint need not make 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Arby's,* 2021 WL 878735, at *3 (quoting *Iqbal*, 556 U.S. at 678).

In this case, Plaintiff's First Amended Complaint comes up short on two grounds. *First*, Plaintiff does not allege that he notified TackleDirect of his alleged disability and sought an accommodation under the ADA. *Second*, a website is not a place of public accommodation under the ADA.

### A.   Plaintiff Did Not Notify TackleDirect of his Claimed Disability and Seek an Accommodation under the ADA Before Filing Suit.

"'[N]otice of the alleged disability ... is an assumed prerequisite' of a Title III claim for failure to make reasonable accommodations." *Castillo v. Hudson Theater, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (ellipsis added by court and quoting *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012)). Thus, the Second Circuit has identified notice as a required element of a failure to accommodate claim in an employment discrimination case. *See, e.g., McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). "Reason dictates that in order for a defendant to be liable for discrimination 'on the basis of disability,' 42 U.S.C. § 12182(a) , the defendant must have had adequate knowledge of the plaintiff's disability." *Shaywitz*, 848 F. Supp. 2d at 467.

In addition to notifying TackleDirect of his alleged disability, Title III of the ADA requires Plaintiff to request *and* TackleDirect to refuse to make a reasonable accommodation. "That is because Title III's requirement that private entities make

17

'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the plaintiff was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test." *Castillo*, 412 F. Supp. 3d at 451 (cleaned up and quoting *Shaywitz*, 848 F. Supp. 2d at 467).

Applying these standards leads inevitably to dismissal in this case. Plaintiff does not allege in the First Amended Complaint that he ever informed TackleDirect of his alleged disability or sought a reasonable accommodation for that claimed disability. Under the ADA, Plaintiff cannot sue first and ask questions later.

**B.     A Website Is Not a Place of Public Accommodation under the ADA.**

Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). Thus, "[t]o state claim for violation of Title III of the ADA, a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Lopez v. W. Elm, Inc.*, 2020 WL 6546214, *3 (S.D.N.Y. Nov. 6, 2020) (ADA accessibility case) (quoting  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012)). In this case, calling a website a "place of public accommodation" does not make it so.

In determining what constitutes a place of public accommodation, we begin, and end, with the statute. "The statute enumerates 12 categories of 'private entities' that 'are considered public accommodations.'" *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011) (citing 42 U.S.C. §§ 12181(7)(A)-(L)); *see also Suris v. Gannett Co.*, 2021 WL 2953218, *1 (E.D.N.Y. July 14, 2021) (ADA accessibility case) ("In order to be a place of public accommodation, a facility ... must fall within one of these 12 categories.") (ellipsis added by court and quoting 28 C.F.R. § 36.104, Appendix C).

"Under the interpretive maxim of *noscitur a sociis*, a word is known by the company it keeps." *Arby's*, 2021 WL 878735, at *5 (quotation omitted). "Similarly, under the statutory canon of *ejusdem generis*, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (cleaned up) (quotation omitted). "Considering each of these maxims, every single example listed among the twelve categories in § 12181(7) is a place or establishment[.]" *Arby's,* 2021 WL 878735, at *5; *see also Winegard v. Newsday*, 2021 WL 3617522, *3 (E.D.N.Y. Aug. 16, 2021) (ADA accessibility case) (of the 50 examples contained in section 12181(7), at least 49 "indisputably relate to physical places"). "Websites or other virtual businesses are not included explicitly or implicitly among any of the categories." *Martinez v. MyLife.com, Inc.*, 2021 WL 5052745, *2 (E.D.N.Y. Aug. 16, 2021) (ADA accessibility case). Based on

these maxims, this Court concluded that gift cards are not a place of public accommodation. This Court should reach the same conclusion concerning websites.

Although the Second Circuit has not yet decided whether a website is a place of public accommodation, the majority of Circuits addressing this issue have held that websites are not places of public accommodation. *Id.* (citing *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *vacated as moot*, 21 F.4th 775 (11th Cir. 2021); *Robles v. Domino's Pizza LLC*, 913 F.3d 898, 905 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019)); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) (public accommodations are limited to actual, physical places); *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (same).

Although district courts in this Circuit have reached conflicting results on this issue, the more recent, and, in our view, better reasoned, decisions have concluded that websites are not places of public accommodation. We point in particular to the decision in *Winegard v. Newsday*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021).

There, the court traced the "long history" of the phrase "public accommodation," which "referred to the particular subset of businesses that had heightened duties of service … because of the public nature of their physical facilities." *Id.* at *2 (ellipsis added and citations omitted). The court further noted that Congress deliberately chose not to expand the scope of the ADA beyond physical places even though there were numerous examples of mail order and other types of retailers that had eschewed brick-and-mortar

establishments by the time the ADA was passed in 1990. *Id*. at *3–4. Likewise, Congress did not seek to expand the scope of the ADA to include websites when it amended the ADA in 2008 even though the online economy had exploded and courts had held the ADA was limited to physical places. *Id*. at *4 n.11.

"All this is clear enough even before we get to the statute's use of the phrase 'place of' to modify the term 'public accommodation.'" *Id*. at *5. "Set together in sequence, the collective phrasing leaves no doubt that Section 12182(a) was not meant to reach" websites. *Newsday*, 2021 WL 3617522, at *5. Drawing on additional sources, the court concluded that "place" ordinarily refers to physical places, not websites. *Id*. at *6. The bottom line is that a website is not a place of public accommodation.

To be sure, some courts in this Circuit have concluded otherwise. "Most district court cases reaching the opposite conclusion in this Circuit have done so in reliance on the Second Circuit's decision in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999)." *Newsday*, 2021 WL 3617522, at *6. As the *Newsday* court further explained, "*Pallozzi* involved a lawsuit against an insurance company that refused to issue a policy based on the plaintiffs' mental-health diagnoses. The holding did not turn on the definition of 'place of public accommodation' in Section 12181(7)." *Newsday*, 2021 WL 3617522, at *6. Because the insurance office in *Pallozzi* was not only a physical place, but also a place expressly listed in the statute, *see* 42 U.S.C. § 12181(7)(F), the question was whether the goods and services offered at that physical place of accommodation had to accommodate

the plaintiff's disability. Therefore, neither *Pallozzi* nor its progeny mandate or suggest any conclusion as to whether a stand-alone website, such as the one at issue here, is a place of public accommodation. *MyLife.com*, 2021 WL 5052745, at *3; *accord Newsday*, 2021 WL 3617522, at *6.

In the final analysis, Congress limited the scope of the ADA to a place of public accommodation, and a website is neither a "place" nor a "public accommodation," as those terms are defined in the statute. Accordingly, Plaintiff's ADA claim based on alleged website inaccessibility should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.   This Court Should Decline Supplemental Jurisdiction over Plaintiff's State and Local Claims.

"Ordinarily, pursuant to 28 U.S.C. § 1337(c), when a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Arby's*, 2021 WL 878735, at *7 (cleaned up) (citations omitted). Once the Court dismisses Plaintiff's ADA accessibility claim, the Court should take the same step it took in *Arby's*, and decline supplemental jurisdiction over Plaintiff's state and local accessibility claims.

**Conclusion**

Defendant respectfully requests that its motion to dismiss be granted.

Dated:  February 11, 2022

/s/ Raina M. Pitts

Frederick P. Galin

Raina M. Pitts

gallin@methwerb.com

pitts@methwerb.com

Methfessel & Werbel, P.C.

2025 Lincoln Hwy., Suite 600

Edison, NJ 08818

(732) 248-4200

Peter J. Brann

Hannah L. Wurgaft

pbrann@brannlaw.com

hwurgaft@brannlaw.com

Brann & Isaacson

184 Main Street, 4th Floor

Lewiston, ME  04243-3070

(207) 786-3566

*Attorneys for Defendant*

## Appendix

## Plaintiff Yensy Contreras' ADA Complaints
## Filed on November 3, 2021

*Yensy Contreras v. Nature's Answer, Inc.*, Case No.: 1:21-cv-09060-PAE-SN (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different types of herbal extracts and supplements")

*Yensy Contreras v. Hydrapak LLC*, Case No.: 1:21-cv-09062-PAE-GWG (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "insulated bike and sport water bottles")

*Yensy Contreras v. Room & Board, Inc.*, Case No.: 1:21-cv-09063-JGK (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different home good and office décor and accessories")

*Yensy Contreras v. Pharmavite LLC*, Case No.: 1:21-cv-09065-RA (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different types of vitamins and supplements")

*Yensy Contreras v. Auberge Resorts LLC*, Case No.: 1:21-cv-09066-GHW (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different resort experiences")

*Yensy Contreras v. Schweitzer Linens, Inc.*, Case No.: 1:21-cv-09067-ER (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "luxury Italian linens for table, bath, and nightwear")

*Yensy Contreras v. Malwarebytes, Inc.*, Case No.: 1:21-cv-09092-GHW (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "cyberprotection for individuals and businesses")

*Yensy Contreras v. Avast Software, Inc.*, Case No.: 1:21-cv-09094-JMF (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different antivirus and cyber security products")

*Yensy Contreras v. Steklen & Walker Co., Inc.*, Case No.: 1:21-cv-09095-JPO (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different brands of wine")

***Yensy Contreras v. TD Associates, LLC*, Case No.: 1:21-cv-09096-VSB (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different fishing accessories")**

*Yensy Contreras v. Wilderness Sports Warehouse, LLC*, Case No.: 1:21-cv-09097-JMF (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different brands of bass fishing accessories")

*Yensy Contreras v. Pottery Pots USA, Inc.,* Case No.: 1:21-cv-09098-JPC (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different styles of fiberstone pots")

*Yensy Contreras v. Playa Bowls, LLC*, Case No.: 1:21-cv-09099-AJN-OTW (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "online ordering and a store locator for smoothie bowls and smoothies")

*Yensy Contreras v. CWGS Group, LLC,* Case No.: 1:21-cv-09100-VEC (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different boat accessories")

*Yensy Contreras v. Black Onyx World LLC*, Case No.: 1:21-cv-09102-VEC (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different hair care products for natural hair")

*Yensy Contreras v. New Earth Beauty, Inc.*, Case No.: 1:21-cv-09104-PGG-KHP (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different types of vegan skin care products")

*Yensy Contreras v. Nortonlifelock, Inc.*, Case No.: 1:21-cv-09106-LGS-KHP (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "cyber security and safety software")

*Yensy Contreras v. HUF Worldwide, LLC*, Case No.: 1:21-cv-09107-LGS (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "different styles of clothing items")

*Yensy Contreras v. Poopy's Inc.*, Case No.: 1:21-cv-09108-ALC (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "bike tee's, accessories, and other merchandise for the Poopy's location")

*Yensy Contreras v. Yoga Six Franchise, LLC*, Case No.: 1:21-cv-09213-PAE (S.D.N.Y.), ECF No. 1, ¶ 2 (Defendant's website sells/offers "yoga classes, training, gift cards, and more")