UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

YENSY CONTRERAS, Individually, and On :   Civil Action No.: 1:21-cv-09096 (VSB)
Behalf of All Others Similarly Situated, :
                            :
                     Plaintiff, :
                            :
     vs. :   ORAL ARUMENT REQUESTED
                            :
TD ASSOCIATES, LLC, :
                     Defendant. :
                            :
                            :

———————————————————— x

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S** <u>**MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION………………..……………………………………...1

II.   STATEMENT OF FACTS………………………………………………...3

III.  LEGAL STANDARDS…………………………………………………...5

    A.  Standards On a Motion Pursuant to
        Fed. R. Civ. P. 12(b)(1)…..……………………………………5

    B.  Standard for Article III Standing ……………………………………6

    C.  Standard to Assess
        Mootness…………………………………………………………7

    D.  Standard On a Motion Pursuant to
        Fed. R. Civ. P. 12(b)(2) …..……………………………………7

    E.  Standard on A Motion Pursuant to
        Fed R. Civ. P. 12(b)(6)…………………………………………...8

IV.  ARGUMENT……………………………………………………………9

    A. This Court has Subject Matter Jurisdiction ………..……...…………...9

        i.      Considering Extrinsic Evidence on A Rule 12(b)(1)
                Motion ………………………………………………………9

        ii.     The Complaint Properly Pleads an "Injury in Fact"......……....11

        iii.    The Complaint Sufficiently Pleads Plaintiff's "Intent
                to Return" …………...........…………….........…………………14

        iv.     No Mootness Since the Website's Accessibility Barriers
                Persist ………..........……….................................................15

    B. The Court has Personal Jurisdiction of Defendant ..…. ……………18

    C. Plaintiff Need Not Request Reasonable Accommodation……………..20

    D. The Website is a Place of Public Accommodation……………………21

    E. The Complaint's NYCHR Claim Survives as Well……………….…..24

i

V.    CONCLUSION………………………………………...……...…………………25

## **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Access Living of Metro Chi. v. Uber Techs., Inc.*, 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) .................................................................................................................. 24

*Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112 (D.N.H. Nov. 8, 2017) .............................................................. 24

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S. Ct. 721 (2013) ................................. 16

*Am. Girl, LLC v. Zembrka*, 2021 U.S. Dist. LEXIS 81897 (S.D.N.Y. April 28, 2021) .............. 19

*Angeles v. Grace Prods.*, 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23, 2021) ................................................................................ 14, 16

*Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020) ................................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 8

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ..................................... 18

*Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854 (S.D.N.Y. Dec. 30, 2019) ............................................................................... 25

*Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306 (S.D.N.Y. Oct. 15, 2019) ............................................................................... 18

*Camacho v. Vanderbilt Univ.*, 18 Civ. 10694, 2019 U.S. Dist. LEXIS 209202 (Dec. 4. 2019) ............................................................................................ passim

*Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447 (S.D.N.Y. 2019) ................... 21

*Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550 (S.D.N.Y. Sept. 26, 2017) ............................................................................................ 7

*Cortec Industries, Inc., v. Sum Holding L.P.*, 949 F.2d 42 (2d. Cir. 1991). ................ 25

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016) ................ 7

*Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) .................................................................... 2, 17, 23

*DiFolco v MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) .............................. 9

*Doe v. Mutual of Omaha Ins. Co.*, 528 U.S. 1106 (2000) ............................................................ 24

*Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS
72193 (S.D.N.Y. April 23, 2020) ....................................................................................... 23

*Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 U.S. Dist.
LEXIS 109679  (S.D.N.Y. June 22, 2020) ........................................................................... 1

*Elsevier, Inc., v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) ...................................... 8

*Gonzalez v. City of New York*, 14 Civ 7721 (LGS), 2015 U.S. Dist. LEXIS 151810
(S.D.N.Y. Nov. 9, 2015) ..................................................................................................... 9

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) ........................................................................... 5

*Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020). ...................................... 12

*Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec.*,
311 F.3d 534 (2d Cir. 2002) ............................................................................................... 4

*Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.
May 20, 2021) ............................................................................................................ passim

*Jones v. Thomas*, 20-CV5581 (LLS), 2020 U.S. Dist. LEXIS 156016  (Aug. 27, 2020) ............ 20

*Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298 (2012) ............................................ 7

*Kreisler v. Second Ave Diner Corp.*,731 F.3d 184 (2d Cir. 2013) ............................................ 15

*Lan Lan Wang v. Pataki*, 396 F. Supp 2d 446 (S.D.N.Y. 2005) ................................................ 4

*Lanier v. Bats Exch., Inc.*, 838 F.3d 139 (2d Cir. 2016) ............................................................ 9

*Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. LEXIS 43838
(S.D.N.Y. Mar. 8, 2021) ............................................................................................ passim

*Martinez v. Mylife.com, Inc.*, 21-cv-4779 (MBC), 2012 U.S. Dist. LEXIS 201585
(E.D.N.Y. Nov. 1, 2021) ................................................................................................... 22

*Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039, 2021 U.S. Dist.
LEXIS 13354 (W.D. Va. Jan. 25, 2021) ........................................................................... 24

*Mercer v. Jericho Hotels, LLC*, 19-CV-5604 (VSB), 2019 U.S. Dist. LEXIS 199897
(S.D.N.Y. Nov. 18, 2019) ............................................................................................. 7, 17

*Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) .............................. 8

*Morgan v. Joint Admin Bd.*, 268 F.3 456 (7th Cir. 2001) ....................................................... 24

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) .............................. 24

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ........................ 5

*Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 U.S. Dist.
    LEXIS 168192 (S.D.N.Y. Nov. 21, 2013) .......................................................... 18

*Paguada v. Athena Allergy, Inc.*, 1:21cv1245 (KFP), Docket No. 39 (S.D.N.Y. Feb.
    22, 2022 ........................................................................................ 8, 19, 23

*Paguada v. YieldStreet, Inc.*, 20 Civ. 9254 (LGS), 2021 U.S. Dist. LEXIS 202311
    (S.D.N.Y. Oct. 20, 2021) ..................................................................... 13, 17

*Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28 (2d Cir. 1999) .................................. 21, 23

*Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707, 2021 U.S. Dist. LEXIS 234057,
    (S.D.N.Y. Dec. 7 2021) ...................................................................... passim

*Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040
    (S.D.N.Y. Jan.  18, 2022) ..................................................................... 3, 19, 22

*Romero v. Adagio Teas, Inc*., 20-cv-7422 (JMF) (S.D.N.Y. July 7, 2021) ................................. 9

*Romero v. Zip Top, LLC*, 20-cv-10189 (LJL) (S.D.N.Y. Aug. 13, 2021) ..................................... 1

*Sanchez v. Welcome Skateboards, Inc.*, 1:21cv2598 (KPF), Docket No. 35, (S.D.N.Y.,
    Jan. 27, 2022) ................................................................................ passim

*Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073
    (S.D.N.Y. Mar. 21, 2019) .......................................................................... 17

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016) ................................. 6

*Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394 (S.D.N.Y. 2004) .................. 9

*Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ........................................... 8

*Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021 U.S. Dist. LEXIS 60964
    (S.D.N.Y. Mar. 30, 2021) .......................................................................... 23

*Winegard v. Newsday LLC*, 19-CV-04420 (EI) (RER) (E.D.N.Y. Aug. 16, 2021) ..................... 22

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 441-42 (S.D.N.Y. 2018) .................................. 16

**STATUTES**

42 U.S.C. § 12181 *et seq*. ................................................................ *passim*

New York C.P.L.R. §302, *et seq.* .................................................................8, 18

N.Y.C. Admin. Code § 8-101, *et seq.* ................................................................5

**RULES**

Fed. R. Civ. P.  12(b)(1), 12(b)(2), 12(b)(6), ............................................... *passim*

Plaintiff Yensy Contreras ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant TD Associates, LLC's ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.  INTRODUCTION

The Motion to Dismiss should be denied in its entirety as it consists of a Gish gallop of regurgitated standing, jurisdiction, and mootness arguments that have been repeatedly rejected by numerous judges (including senior judges) in the Southern District of New York.[1]

*First*, the First Amended Class Action Complaint ("FACAC")[2] properly pleads all of the facts necessary to support a proper claim under the Americans with Disabilities Act of 1990 ("ADA"). An ADA website-accessibility complaint need not "contain detailed factual allegations" to survive a motion to dismiss. *Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4 (S.D.N.Y. May 20, 2021).  Nonetheless, the FACAC alleges nine specific barriers on Defendant's Website (defined below) that either caused delay, impeded Plaintiff's ability to make an informed choice, or prevented him from completing a purchase there. ¶2(a)-(i).  Defendant's response is to simply deny this without proper evidential support and to label all of the FACAC's

---

[1]    As an initial matter, Defendant repeatedly proposes that there is something sinister about the number of lawsuits Plaintiff files. This is neither factually nor legally relevant. "There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." *Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 U.S. Dist. LEXIS 109679, at *11 (S.D.N.Y. June 22, 2020); *see also Camacho v. Vanderbilt Univ.*, 18 Civ. 10694, 2019 U.S. Dist. LEXIS 209202 (Dec. 4. 2019) ("[a plaintiff] does not lack standing merely because he believes he has been similarly injured by other defendants]." Indeed, Judge Failla recently referred to this characterization of serial plaintiff as unbecoming name calling before denying a similar motion to dismiss in an ADA website accessibility action. *See Sanchez v. Welcome Skateboards, Inc.*, 1:21cv2598 (KPF), Docket No. 35, at 7:6-9 (S.D.N.Y., Jan. 27, 2022).  A copy of the *Sanchez* decision is attached as Exhibit A to the Declaration of Edward Y. Kroub in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Kroub Decl.").  Indeed, this is presumably why Congress provided for attorney's fees and thereby made plaintiffs  private attorneys general as the enforcement mechanism of the ADA. *See Romero v. Zip Top, LLC*, 20-cv-10189 (LJL), (Aug. 13, 2021).

[2]    "¶__" means a citation to paragraph numbers in First Amended Class Action Complaint. "Def. Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 25).

well-pled allegations as "conclusory." However, courts in this District have repeatedly found allegations such as those contained in the FACAC sufficient to defeat motions to dismiss.

*Second*, Defendant's attempt to raise a factual dispute about these injuries – specifically as to whether the Website is now accessible – is based on untested extrinsic evidence. Whether characterized as a standing or mootness argument, that sort of factual dispute cannot be resolved at the motion to dismiss stage. Defendants in ADA website cases repeatedly assert that their websites are irrevocably compliant, but this has failed again and again where plaintiff can submit expert affidavits disputing this. Such disputes are "properly tested in discovery and at summary judgment or trial" as first held by Judge Engelmayer in *Del-Orden v. Bonobos, Inc*., 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) and reaffirmed repeatedly up through Judge Failla's ruling last month in *Sanchez v. Welcome Skateboards*. Kroub Decl., Ex. A at 19:8-11.

Defendant's "evidence" of remediation in this case is even less persuasive than it was in *Del-Orden* or *Sanchez*. This is because it comes in the form of an untested statement from the most interested member of Defendant (its co-founder, Gill) which purportedly repeats the unsworn vague statements of a third party (Eli Lane) to suggest that the Website is ADA complaint. Plaintiff has put forth competent expert evidence, in the form of a sworn declaration, disputing that the Website is currently compliant. A defendant's evidence that its website is ADA compliant, in the face of countervailing evidence from a plaintiff, will not warrant dismissal for mootness. Here, Defendant's unsworn hearsay isn't competent evidence at all and is not sufficient to counter the FACAC's well-pled allegations.

*Third*, this Court has personal jurisdiction here because Defendant's Website is an interactive one which transmits goods directly to New York customers.  Such a website is sufficient

to confer personal jurisdiction in a case alleging that the website violated the ADA. Further, Defendant misstates the law concerning requesting an accommodation under the ADA: Plaintiff is not required to request an accommodation given the specific provisions of the ADA pled in the FACAC; namely, intentional discrimination and disparate impact under 42 U.S.C. §12182(b)(1)(A)(i)-(ii). ¶¶40-41.

*Fourth*, the Motion to Dismiss simply chooses to ignore the clear and unambiguous precedents of the Southern District of New York that a website is, unequivocally, a place of public accommodation. As this Court previously recognized in dicta in *Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. LEXIS 43838, at *15 (S.D.N.Y. Mar. 8, 2021): "[c]ourts in this district have held that websites qualify as places of public accommodation under the ADA." This trend has continued uninterrupted since this Court's ruling, and was recently reaffirmed by Senior Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). Defendant's citations to other districts – whose decisions and importantly, their untenable reasoning, have been repeatedly examined and rejected in this District – is nothing more than a petulant insistence that Southern District Judges have been uniformly "getting it wrong" over the past few years. Not so.

*Finally*, because Defendant has failed to establish grounds for dismissal of Plaintiff's ADA claims, Defendant's attempts to dispose of this Court's supplemental jurisdiction over the New York City Humans Right Law ("NYCHRL") claim also fails.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied in its entirety.

## II.   STATEMENT OF FACTS

Defendant is an online retail company that owns and operates the Website, www.tackledirect.com ("Website"). ¶¶2; 20. The Website offers goods for sale to consumers in

New York including, but not limited to, fishing gear, such as rods, reels, tackle and apparel. ¶20. Plaintiff is a visually-impaired and legally blind person who uses screen-reading software in order to read website content using his personal computer. ¶¶1, 22.  Plaintiff made several visits to the Website, including on October 30, 2021, December 7, 2021, January 15, 2022, and January 16, 2022. ¶2. Plaintiff attempted to transact business on Defendant's Website by attempting to purchase fishing equipment, including a Shimano Sedona FI Spinning Reel from the Website. ¶24.[3]  Plaintiff was unable to successfully complete a purchase because the Website was not compliant with the current ADA accessibility standards and contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date of the filing of the FACAC. ¶25. Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the services offered to the general public on the Website. ¶¶9, 21, 22, 23, 25. These barriers include, without limitation (collectively, the "Access Barriers"):

- The screen reader did not and cannot read sections of the Website's banner, delaying Plaintiff's ability to navigate the Website as a sighted person would;

- The screen reader cannot read promotional images on the Website, impeding Plaintiff's ability to make an informed choice as to products available on the Website;

- The screen reader cannot read images of products available on the Website, impeding Plaintiff's ability to make an informed choice as to products available;

- The screen reader skips over text when navigating with the Tab key;

- The screen reader stops reading text on the Website in mid-sentence, preventing Plaintiff from comprehending what is on the Website as a sighted person would;

---

[3]      Defendant's papers state that the Website does not sell this product. *See* Def. Mem at 7, 10. This is not correct. This product may be purchased directly from Defendant's Website at https://www.tackledirect.com/shimano-sedona-fi-spinning-reels.html. A picture of the product as displayed on the Website is attached as Exhibit B to the Kroub Decl. As a public document, it is appropriate to take judicial notice of content on a website on a motion where the authenticity of a website has not been questioned. *See Hotel Emples. & Rest Emples. Union, Local 100 v. City N.Y. Dep't of Parks and Rec*., 311 F.3d 534, 549 (2d Cir. 2002); *Lan Lan Wang v. Pataki*, 396 F. Supp 2d 446, 456 (S.D.N.Y. 2005). Moreover, Defendant's co-founder admits that the company sells this product. *See* Docket No. 26 at ¶19.

- The screen reader does not read submenu headers, delaying Plaintiff's ability to navigate the Website as a sighted person would;

- The screen reader does not read when an item has been added to the Website's "Cart" function, delaying Plaintiff's ability to navigate the Website and make a purchase as a sighted person would;

- The screen reader reads text which is not otherwise visible on the page, causing confusion and delaying Plaintiff's ability to navigate the Website as a sighted person would; and

- The screen reader does not read the "checkout" button to allow Plaintiff to complete a purchase, impeding and delaying Plaintiff's ability to make a purchase as a sighted individual would.

¶¶2, 23.

While Plaintiff was denied equal access to the Website, Plaintiff remains hopeful that the Access Barriers will be cured, as he intends to return to the Website to purchase the Shimano Sedona FI Spinning Reel from Defendant as soon as the Accessibility Barriers are eliminated. ¶24.

Based on these allegations, the FACAC adequately alleges Defendant's violations of 42 U.S.C. § 12181, *et seq.* – Title III of the ADA, and the NYCHRL, N.Y.C. Admin. Code § 8-101, *et seq.*.

## III.   LEGAL STANDARDS

The Second Circuit cautions courts against prematurely dismissing complaints of civil rights violations. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

### A.   STANDARD ON A MOTION PURUSANT TO FED. R. CIV. P. 12(B)(1)

When examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The burden of providing subject matter jurisdiction by a preponderance of the evidence is borne by plaintiff. *Id.* The Southern District of New York has held in ADA website accessibility cases that a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4. When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations. *Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707, 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021).

### B.    STANDARD FOR ARTICLE III STANDING

A plaintiff pleads a sufficient injury for Article III standing by "show[ing] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

To satisfy standing in an ADA website accessibility action, a plaintiff must allege certain facts, including: (i) when they attempted to access the website; (ii) what they were attempting to do on the website; (iii) the specific barriers that prevented them from gaining access; and (iv) how

they intend to utilize the website in the future. *See Sanchez*, Ex. A to the Kroub Decl., at 10:15-21.

### C.   STANDARD TO ASSESS MOOTNESS

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  As noted by this Court, there is a two-part test to determine whether *a defendant* has met its formidable burden of indicating whether a case is moot: (i) that it has completely and irrevocably eradicated the effects of any alleged violation; and (ii) that there are no reasonable expectations that the alleged violation will recur. *See Mercer v. Jericho Hotels, LLC*, 19-CV-5604 (VSB), 2019 U.S. Dist. LEXIS 199897, at *7 (S.D.N.Y. Nov. 18, 2019). Specifically, where noncompliance can result from an easily changeable policy, as opposed to a physical alteration, a court cannot simply say that a defendant has made an affirmative showing that the continuation of their alleged ADA violations is nearly impossible. *See De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (internal citations omitted).  Similarly, in an ADA website accessibility case, where it is disputed as to whether multiple barriers still allegedly exist on a website, the case is not mooted. *See Quezada v. U.S. Wings, Inc*., 2021 Dist. LEXIS 234057, at *8.

### D.   STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(2)

"To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff has the burden of establishing that the court has jurisdiction over the defendant." *Clemmons v. Hodes*, 15 Civ. 8975 (KPF), 2017 U.S. Dist. LEXIS 158550, at *18-*19 (S.D.N.Y. Sept. 26, 2017) (*citing Metro. Life Ins. Co., v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.

1996)). When considering a Rule 12(b)(2) motion to dismiss, a court must construe all of the complaint's allegations as true. *See Elsevier, Inc., v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (*citing A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)).

Under New York C.P.L.R. §302(a)(1), a court determines whether it has personal jurisdiction by examining: (1) whether the defendant transacts any business in New York; and (2) whether the cause of action arises from such a business transaction. *See Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *7 (S.D.N.Y., Dec. 4, 2019) (*quoting* N.Y. C.P.L.R. § 302(a)(1)); *see also Paguada v. Athena Allergy, Inc.*, 1:21cv1245 (KFP), Docket No. 39 at pp. 11:12-12:12 (S.D.N.Y. Feb. 22, 2022). A copy of the *Paguada* decision is annexed hereto as Exhibit C to the Kroub Decl..

To determine whether the operation of a website amounts to the transaction of business in New York, courts typically look at the degree of interactivity offered by the website. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *12. If the website falls on the far end of the spectrum by directly allowing the purchase of goods or services, then the website is "fully interactive" and can serve as a basis for personal jurisdiction. *Id*. at *13.

### E.      STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4 (S.D.N.Y. May 20, 2021) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lopez*, 2021 U.S. Dist. LEXIS 43838, at *7-*8. A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). All reasonable inferences are drawn in the plaintiff's favor. *Id*. The court's review is "limited to the

facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference." *Id*. at *6. To survive dismissal, "plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) (internal citations omitted).

## IV.   ARGUMENT

### A.  THE COURT HAS SUBJECT MATTER JURISDICTION

(i)      Considering Extrinsic Evidence on a Rule 12(b)(1) Motion

Examining extrinsic evidence is limited under Rule 12(b)(1) where a challenge to jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits. *See Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (citation omitted).  In considering such a motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  It is inappropriate, however, to convert a motion to dismiss to one for summary judgment where, as here, a plaintiff has not had the opportunity to obtain discovery. *See Gonzalez v. City of New York*, 14 Civ 7721 (LGS), 2015 U.S. Dist. LEXIS 151810, at *12 (S.D.N.Y. Nov. 9, 2015).

Moreover, competing affidavits regarding factual issues such as compliance of a website reinforce the conclusion that discovery is necessary to determine defendant's compliance with the ADA or lack thereof. *See Romero v. Adagio Teas, Inc*., 20-cv-7422 (JMF) at pp.5:8-22 (S.D.N.Y. July 7, 2021) (internal citations omitted) (a copy of Judge Furman's decision is attached as Exhibit D to the Kroub Decl.); *see Sanchez*, Ex. A to Kroub Decl. at 19:8-11 ("Discovery will disclose

whether plaintiff has actually raised issues worthy of a trial, but for now, this Court must conclude that he has pleaded adequate claims.").

The merits of this case rest on whether Access Barriers exist on the  Website.  Defendant has intertwined its jurisdictional challenge with the case's merits to effectively plead a blanket denial of all allegations based on extrinsic evidence. *See, e.g.*, Docket No. 26 at ¶7 ("I strongly dispute Plaintiff's amended allegations that the Tackle Direct Website is inaccessible"); *see also* Def. Mem. at 7.  This unadorned denial does not warrant dismissal.

In the first instance, the Gill Declaration is based on hearsay: i.e. the out-of-court, unsworn statements made by Eli Lane. *See* Docket No. 26 at ¶5. *Second*, the denials contained in the Gill Declaration are equivocal and unspecific.  For example, "I understand from Lane that this [barrier] is a common issue with the NVDA screen reader . . . Nonetheless Lane has made certain changes to the website to improve accessibility for customers using NVDA software." *Id*. at ¶11.  This does not detail the nature of the changes or state whether the "improve[d] accessibility" allows for navigation equivalent to a sighted individual. Similarly, regarding Plaintiff's inability to receive descriptions of images of products, the Declaration bluntly asserts "I understand Lane has not identified this as an issue." *Id*. at ¶10. There is no analysis or other information as to how this non-party came to this conclusion, or if indeed these were his words since Eli Lane, who allegedly conducted this analysis, is not the declarant and has not been subject to cross examination.  Thus, the use of extrinsic evidence should be limited under these circumstances.   Defendant should only be allowed to present this evidence after Plaintiff has had the opportunity to scrutinize it and depose Defendant's witnesses.  Otherwise, Defendant's declarations, which rely on vague assertions and hearsay, have no more probative value than a standard answer denying the FACAC's allegations, and like an answer, should proceed to discovery.

Finally, as described more fully *infra*, Plaintiff has submitted (aside from allegations concerning his own personal experience) competing expert testimony that confirms the Website's access barriers existed and persist. *See* section (iv).

(ii)     The Complaint Properly Pleads an "Injury-in-Fact"

The FACAC properly pleads that Plaintiff was injured when he encountered Access Barriers that denied him full and equal access to the Website multiple times and now deter Plaintiff on a regular basis from accessing the Website in the future. ¶9, 22-24.  To satisfy standing in an ADA website accessibility action, a plaintiff must allege:

- (i) When they attempted to access the website;

- (ii) What they were attempting to do on the website;

- (iii) The specific barriers that prevented them from gaining access; and

- (iv) How they intend to utilize the website in the future.

*See Sanchez*, Ex. A to the Kroub Decl., at 10:15-21.

The FACAC does this:

- (i) Plaintiff alleges he visited the Website on October 30, 2021; December 7, 2021; January 15, 2022; and January 16, 2022. ¶¶2;22;

- (ii) Plaintiff alleges the exact product he attempted to buy there—a Shimano Sedona FI Spinning Reel. ¶¶2-3, 24;

- (iii) Plaintiff sets forth the specific website functions that prevented Plaintiff from completing a purchase as a sighted person would, including the website banner, promotional images, images of products, submenu headers, and "cart" and "checkout function. ¶¶23(a)-23(i).  Plaintiff further alleges that these specific functions and

deficient pages directly prevented Plaintiff from completing a purchase which would otherwise be available to sighted individuals. ¶25; and

- (iv) Plaintiff alleges how he intends to utilize the website in the future—i.e. to transact business there as soon as the accessibility barriers are cured. ¶24.

The FACAC is thus similar to the surviving complaints in recent cases before Judges Oetken and Failla (who denied similar motions to dismiss). In *Jaquez*, Judge Oetken denied defendant's motion to dismiss because the allegations that a website contained the following deficiencies pled a sufficient injury: (i) failure to describe the contents of graphical images; (ii) failure to properly label titles; (iii) failure to distinguish one page from another; (iv) pages containing multiple broken links and inaccurate headings; (v) inability to add items to the online shopping cart; and (vi) the website accessibility icon was too hard to find. *See Id*. at *4-*5. The FACAC specifically lists many of the same access barriers. Specifically, the FACAC pleads that the Website contained site elements, such as sub menus, the "cart" and "checkout" functions, as well as graphical descriptions of products, that were not properly labeled by Defendant to integrate with Plaintiff's screen reader. ¶¶2, 23.

More recently, in *Sanchez*, plaintiff likewise listed seven specific barriers that prevented his purchase from the Website, which the Court held, along with the consequent deterrence to the plaintiff, constituted a sufficient injury to confer standing. Given the similarity of the barriers pled in the FACAC, and the deterrent effect, to the pleadings in *Jaquez* and *Sanchez*, Defendant's argument regarding failure to plead an injury is unavailing.

Likewise, a plaintiff that cannot make an informed choice about the products suffers a well pleaded threat of future harm. *See Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 169-170 (S.D.N.Y. 2020). Plaintiff here has pled this ongoing harm – specifically, that since the

descriptions of the items he wished to purchase were not accessible on the Website, his ability to make an informed choice was impeded. ¶2(b)-2(c).

The FACAC further lays out the specific website functions that prevented Plaintiff from completing a purchase as a sighted person would, including the Website banner, promotional images, images of products, submenu headers, and "cart" and "checkout function. ¶¶23(a)-23(i). These specific functions and deficient pages directly prevented Plaintiff from completing a purchase in a manner which would otherwise be available to sighted individuals. ¶25. These technical barriers, which discriminated against Plaintiff by denying him a full and equal opportunity to use the Website, are similar to those that have previously be found to satisfy the relatively low pleading standard. *See Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4-*5 (noting broken links, inaccurate headings and inability to add items to the "cart" were sufficient for pleading); *see also Paguada v. YieldStreet, Inc.*, 20 Civ. 9254 (LGS), 2021 U.S. Dist. LEXIS 202311, at *11 (S.D.N.Y. Oct. 20, 2021) (rejecting defendant's arguments that technical issues listed – including links the screen reading software could not differentiate – were "foot faults" rather than ADA violations preventing access to the website).

Similarly, in *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *26, Judge Failla, held that the plaintiff pleaded a concrete injury, deterrence where:

> [Plaintiff] was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that deterrence constitutes an injury under the ADA.

Notably, it is sufficient for a plaintiff to plead the specific barriers that prevented them from gaining access to a website and how they intend to use the website in the future—but it is not

necessary for a proper pleading to state the exact product a plaintiff intends to buy. *Angeles v. Grace Prods.*, 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-*4 (S.D.N.Y. Sept. 23, 2021) ("[plaintiff] was (and is) interested in purchasing Defendant's beauty products.")

The FACAC describes both the product Plaintiff intended to buy (a Shimano Sedona FI Spinning Reel), and how he intends to utilize the website in the future (to transact business there as soon as the accessibility barriers are cured.) ¶24.  The FACAC, thus, establishes recognized injuries (unequal access and deterrence), as well as the specific website functions which caused this, to properly plead an injury in fact.

(iii)      The Complaint Sufficiently Pleads Plaintiff's "Intent to Return"

Contrary to Defendant's arguments, Plaintiff has established a threat of future injury by pleading an intent to return. Specifically, "Plaintiff was highly interested in purchasing the fishing equipment offered by Defendant, specifically the Shimano Sedona FI Spinning Reel. Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff intends to return to the Website in order to transact business there as soon as the accessibility barriers are cured." ¶24. This is sufficient for standing.

In a website accessibility action under the ADA, the standard for establishing this part of standing under 12(b)(1) is less burdensome than those regarding barriers at a physical location, requiring only a reasonable inference that a plaintiff intended to return to the website. *See U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, at *9 (citing *Camacho,* 2019 U.S. Dist. LEXIS 209202, at *11).

In *U.S. Wings*, Judge Ramos found that an ADA website plaintiff had sufficiently shown intent to return, and thus an ongoing injury, by pleading two things: (i) specific intent to return to the website if accessibility issues were mediated; and (ii) that Defendant's website offered products

and services nationwide. Thus, the Court reasoned, "As websites are easily accessible at any moment, [plaintiff]'s claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing." *Id*. at *11. As such, factual considerations of an intent to return which would apply to a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021) (noting plaintiff had failed to establish what he wished to purchase with a gift card and why this was preferable to cash or credit). Both criteria for a website case are met here. Plaintiff has specifically indicated an intent to return once the technical barriers are removed, and Defendant itself notes that it sells products throughout the United States, including to New York Citizens. Def. Mem at *15; Def. Ex. A ¶¶13; 19(a). As such, this prong of standing is met.[4]

(iv) <u>No Mootness Since the Website's Accessibility Barriers Persist</u>

Defendant, again relying on inadmissible extrinsic hearsay evidence, claims that "[Defendant]'s immediate response to Plaintiff's alleged concerns eviscerates [the claim] … that the alleged discriminatory treatment will continue." Def. Mem. at *8. Defendant's response is not sufficient to defeat standing on mootness grounds.

A defendant defending against an allegation its website violated the ADA can moot plaintiff's claim by providing evidence that makes it absolutely clear that the alleged wrongful

---

[4] Notably, there is no requirement that a Plaintiff visit a public accommodation any specific number of times to establish a plausible intent to return given the ongoing injury of deterrence. Specifically, in the case of *Kreisler v. Second Ave Diner Corp.*,731 F.3d 184 (2d Cir. 2013), the Second Circuit found that the plaintiff had suffered an injury under the ADA despite having *never* attempted to enter the public accommodation. *Id.* at 188. Instead, the Second Circuit found standing given that a barrier had deterred plaintiff from entering the public accommodation, plaintiff's proximity to the physical location, and stated intent to return should the barrier be removed. *Id.* As discussed in *U.S. Wings*, this physical proximity is not required in website cases if the Defendant can demonstrate that goods or services could be purchased online by a plaintiff but for the barriers. *U.S. Wings.*, 2021 U.S. Dist. LEXIS 234057 at *10-*11.

behavior ceased and cannot reasonably be expected to recur. *See Angeles*, 2021 U.S. Dist. LEXIS 182317, at \*7. This high standard is necessary because "[o]therwise, upon dismissal a defendant could simply resume its conduct." *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 441-42 (S.D.N.Y. 2018) (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721 (2013)).

The Website is still in violation of the WCAG standards and the ADA. Defendant has not sufficiently established (let alone even introduced admissible evidence suggesting) that it has remediated the Website and that it cannot reasonably be expected to violate the ADA again. As set forth in the Declaration of Robert D. Moody, who examined the Website on February 28, 2022 (after Defendant's instant motion was submitted), "issues with the identified website do exist and moreover, those issues are a barrier to individuals with low to no vision." *See* Declaration of Robert D. Moody, dated February 28, 2022 ("Moody Decl.") at ¶7, annexed hereto as Exhibit E to the Kroub Decl..  These ongoing barriers include:

- The telephone number provided on the website lacks a full description. It is read as a number; however, it does not specify it is a telephone number thus barring the user from contacting the company for assistance.

- Some text is not properly labeled. For example, in the text search bar it shows "Search over 80,000 products" instead the screen reader states, "eighty back slash zero zero zero products". Another example is the Cablz Zipz Eyeglass retainer item, the price is labeled as "dollar twelve point ninety nine". The mislabeled information can cause a barrier if the price of the items is not clear and concise.

- Site function like navigation buttons for main content, menu or footer are missing. Every page should include hidden links that by clicking on them, either using the keyboard navigation or a screen reader, the user can 'skip' certain blocks of information to go directly to main landmarks such as main content, menu, or footer

- The quantity "increase" and "decrease" buttons are mislabeled as "plus sign / hyphen" respectively. The poor labeling creates a barrier to the website's main functions and elements

- Contact information located at the footer of the page is not fully accessible. The company's address, retail store hours, telephone numbers and phone and email support hours are inaccessible

- In the FAQ page site element such as text providing information are not labeled to integrate with the screen reader. Links associated with the text are accessible however, lack sufficient description that keeps the user from understanding the purpose of the links.

- The shopping cart is not fully functional. The "X" in the upper right hand corner, which is used to close the shopping cart window, is mislabeled as "link". The pricing such as product price, estimated shipping, total before tax and estimated tax are all inaccessible when navigating with a keyboard. The payment options of International Checkout and Pay with Amazon are inaccessible. This flaw bars the user from confirming the cost of the purchase before completing the transaction. *See* Moody Decl. at ¶8.

 Mr. Moody concluded:

 It is my expert opinion and with a high degree of scientific certainty the website…has defects, can and will continue to create problems for visually disabled persons, such as the Plaintiff and these defects act as a barrier to the effective use and enjoyment of the site for persons with low to no vision. Moody Decl. at ¶11.

Thus, Plaintiff's expert has identified ongoing Access Barriers inhibiting the equal use of the Website by the visually impaired.  As a result, Defendant's extrinsic evidence ***at best*** is analogous to an answer denying the allegations of the FACAC, and this case should proceed to discovery. *See Mercer*, 2019 U.S. Dist. LEXIS 199897, at *8 (holding that it is insufficient to moot a case based on a "reed thin" assertion by the owner of a public accommodation that accessibility barriers have been remedied). Other courts have found Mr. Moody's reports persuasive in rejecting mootness.  *See YieldStreet*, 2021 U.S. Dist. LEXIS 202311; *U.S. Wings*, 2021 U.S. Dist. LEXIS 234057; *Angeles*, 2021 U.S. Dist. LEXIS 182317; and *Sanchez*, 21 Civ. 2598 (KPF).

As demonstrated by the Moody Declaration, ***barriers to access continue to persist*** even after the filing of the instant Motion to Dismiss. *See Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Del-Orden,* 2017 U.S. Dist. LEXIS 209251 (holding same, where complaint alleged, and court's

review of website confirmed, at least one continued barrier to access). Given that the FACAC pleads ongoing violations, Defendant has not sufficiently met its burden of establishing that the alleged barriers have been remedied and would not occur again and, thus, Defendant's mootness argument fails.

### B.  THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

This Court has personal jurisdiction over Defendant as the New York long-arm statute provides for an exercise of personal jurisdiction "over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  A highly interactive website, like the one Defendant operates, meets the requirements of personal jurisdiction under C.P.L.R. § 302(a). For a website to confer jurisdiction, "[s]omething more [than visibility in the forum state] is necessary, such as interactive features which allow the successful online ordering of the defendant's products." *Novelaire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472 (CM), 2013 U.S. Dist. LEXIS 168192, at *10-*11 (S.D.N.Y. Nov. 21, 2013).

Specifically, the degree of interactivity and the commercial nature of the exchange of information that occurs on the site is indicative of whether a court can exercise personal jurisdiction. *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *12.  If a website "allows for transactions to be completed, for example, by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007)); *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 U.S. Dist. LEXIS 178306, at *8 (S.D.N.Y. Oct. 15, 2019).  While a website's capacity to be accessed in New York cannot alone establish personal jurisdiction in the absence of any specific targeting of New York by the defendant, personal jurisdiction exists

where the plaintiff establishes a reasonable probability that the Website has been actually used to effect commercial transactions with customers in New York. *See U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, at *18 ("[Defendant]'s website is interactive, as it allows for the purchase and exchange of goods, including to New York, and therefore confers personal jurisdiction."); *see also Paguada*, Ex. C to the Kroub Decl. at p. 12:2-12.

Senior Judge Kimba Wood comprehensively analyzed the recent development in this area in *Romero*, 2022 U.S. Dist. LEXIS 9040.  An interactive website, which transacts business only with sighted customers, but not visually impaired ones, meets the two requirements of personal jurisdiction under the long-arm statute: transacting business within New York, and a substantial claim of discrimination that occurred in New York. *Id*. at *8. Contrary to Defendant's assertion, the location of the website's owner, or where the website is maintained, is irrelevant.  Personal jurisdiction is established under the long-arm statute by evaluating how a business conducts its commercial activities with different classes of New York consumers

Aside from the interactivity of the Website, "[p]ersonal jurisdiction can be exercised only if Defendant used the Website to "purposely avail" itself of the forum state." *Id*. at *7. Here, as in *Romero*, the Website "is used to effect commercial transactions with customers in New York. This purposeful availment of the New York market is sufficient to meet the 'transacting business' prong for personal jurisdiction pursuant to New York's long-arm statute." *Id*.

The fact that a website does not specifically advertise in or target business from the State of New York does not refute the presumption of personal jurisdiction when that website's products are readily available for sale to New York customers, and that it actually sends goods to the state. *See Paguada*, Ex. C to the Kroub Decl. at 13:9-16; *cf. Am. Girl, LLC v. Zembrka*, 2021 U.S. Dist. LEXIS 81897 (S.D.N.Y. April 28, 2021) (defendants had a policy of not shipping products from

China to the United States and refund any money paid by a potential American customer).  It is notable that nowhere in Defendant's papers does it deny that it delivers products into the state of New York, instead seeking to conflate the fact that it ***doesn't target*** New York consumers with ***not delivering*** to New York consumers.

However, Defendant's business ties to New York are demonstrated by the information on its own Website. On the homepage, the Website specifically lists "Worldwide Shipping, Where you fish, we deliver fast and at a reasonable price." *See* Kroub Decl. at Exhibit F (screen shot of the Website). Similarly, the Website's shipping policy states "[s]hipments within the contiguous 48 states in the US have their shipping costs calculated in both the shopping cart and checkout process."[5] It is also possible to enter a New York address into the shipping information. *See* Kroub Decl. at Exhibit G (screen shot of the Website).  Since Plaintiff attempted to complete a transaction in New York to have goods delivered to him at his New York residence while on the Website, the Court clearly has personal jurisdiction.

### C.  PLAINTIFF NEED NOT REQUEST REASONABLE ACCOMMODATION

Defendant misstates the law by asserting that Plaintiff was required to request a reasonable accommodation prior to filing an action. *See* Def. Mem. at 16-18.  Under the ADA, a plaintiff may base a disability discrimination claim on any (or all) of three theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.  *See Jones v. Thomas*, 20-CV5581 (LLS), 2020 U.S. Dist. LEXIS 156016, at *7 (Aug. 27, 2020) (citations omitted).  Importantly, only this last theory requires that a plaintiff

---

[5]     Accessible at https://www.tackledirect.com/info.html#Shipping. It should be noted that this page indicates that Lead Sinkers ½ oz or less cannot be shipped to the state of New York. Defendant's identification of a single type of product, amongst the hundreds on its website, that it does not ship into New York is strong evidence that Defendant ships all other items on its website (including the reel Plaintiff attempted to purchase) to the State.

request accommodation under 42 U.S.C. §12182(b)(2)(A)(ii).  *Id*; *see also Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 450 (S.D.N.Y. 2019).  The FACAC here properly pleads the first two theories as well as separate causes of action under 42 U.S.C. §12182(b)(1)(A)(i)-(ii) of the ADA.[6]  ¶¶ 40-41.

### D.  THE WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION

The precedents established in this District are unequivocal: websites in and of themselves are places of public accommodations under the ADA.  This reasoning, supported by other S.D.N.Y. district judges, logically flows from the precedent of the Second Circuit, which has stated that Title III's mandate ensures "full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] more than mere physical access." *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir 1999)*.*  Based on this reasoning, courts in this District and throughout this Circuit have emphasized that it is the sale of goods and services to the public, and not relation to a location, physical or otherwise, where a sale is executed, that determines whether the protections of the ADA apply.  Indeed, as this Court found in support of the dictum that a website is a place of public accommodation, "a company's website is essentially a stand in for its brick-and-mortar business establishments." *Lopez*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *15 (S.D.N.Y. March 8, 2021).

Since this Court's holding, other districts have issued rulings on this matter, but a comprehensive rejection of the "brick-and-mortar" standard was recently ruled on by Senior Judge Wood in *Romero*, which held unequivocally "websites qualify as places of public accommodation,

---

[6]    *Cf. Arby's Franchisor,* 2021 U.S. Dist. LEXIS 43838*,* at *18-*19, where this Court noted a request for a reasonable accommodation is required under for claims under the very next section, 42 U.S.C. 12182(b)(1)(A)(iii).

albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *88 Acres Foods Inc.,* 2022 U.S. Dist. LEXIS 9040 at *16.  After a thorough analysis of various foreign circuits, as well as the E.D.N.Y. decisions in *Martinez v. Mylife.com, Inc.,* 21-cv-4779 (MBC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) and *Winegard v. Newsday LLC*, 19-CV-04420 (EI) (RER) (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Wingard's* reasoning compelling." *Id.*

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered accommodations, other entities such as "travel services" were listed. *Id.* at *17-*18. Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *Romero* held, one could come out with the "absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods." *Id.* at *18. Rejecting the Eastern District's reasoning, the court in *Romero* then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id.* at *18.

Judge Wood then proceeded to analyze the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . .should keep pace with the rapidly changing technology of the times." *Id.* at *19. This applies to the large volume of interstate commerce transacted through websites. *Id.*  Given the prominence of online retail establishment in providing goods and services directly to

customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces.

Judge Wood's ruling is the culmination of a long series of rulings by Southern District Judges.  Following the seminal holding by the Second Circuit in *Pallozzi*, 198 F.3d at 32 that "the [ADA] was meant to guarantee . . .more than mere physical access," Judge Engelmayer held in *Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *24:

> A commercial website itself qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal access." To hold otherwise, "Congress's purposes in adopting the ADA would be frustrated were the term public accommodation given a narrow application under which access to the vast world of Internet Commerce would fall outside the statute's protection.

From *Del-Orden* to this Court's own Holding in *Arby's Franchisor*, through *Romero*, other courts of the Southern District have also held that arbitrarily excluding entities that sell and distribute goods and services digitally as opposed to physical locations is both unworkable and not in keeping with the text and history of the statute.  These include:

- Judge Woods, *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193, at *22-*23 (S.D.N.Y. April 23, 2020)  ("[Requiring] some nexus between the website and the physical place of public accommodation is both unworkable and would produce absurd results.");

- Judge Nathan, *Winegard v. Crain Comms., Inc.*, 20-cv-01509 (AJN), 2021 U.S. Dist. LEXIS 60964, at *6 (S.D.N.Y. Mar. 30, 2021) ("Defendant's website is a place of public accommodation.");

- Judge Oetken, *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *7-*8 ("multiple district courts in this circuit-including this one-have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store."); and

- Judge Failla, *Paguada*, Ex. C to the Kroub Decl.

There is no ambiguity – in this District, commercial websites are places of public accommodation under the ADA.

Confronted with the fact that each of the seven judges in the Southern District who has considered the issue has determined that websites are places of public accommodation even in the absence of a brick-and-mortar location, Defendant suggests that the Southern District's rulings are anomalies. This is false. For example, the Seventh Circuit also refused to limit its interpretation of places of public accommodation to physical locations, and when the seminal case in that Circuit came to pass, the Supreme Court of the United States denied certiorari. *See Doe v. Mutual of Omaha Ins. Co*., 528 U.S. 1106 (2000) (cert. denied); *see also Morgan v. Joint Admin Bd*., 268 F.3 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation").[7]

Thus, whether Defendant's Website is connected to a physical place of business is immaterial for the purposes of the ADA. Defendant's attempts to impugn the decisions of the judges of the Southern District as aberrant is unavailing.

### E.  THE COMPLAINT'S NYCHRL CLAIM SURVIVES AS WELL

---

[7]    Similar decisions have been issued by various federal district courts in several circuits.  *See, e.g.*, *Mejico v. Alba Web Designs, LLC*, Civil Action No 7:20CV00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive"); *see also Access Living of Metro Chi. v. Uber Techs., Inc*., 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *Access Now, Inc., v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012).

For the reasons discussed above, Defendant's attacks on Plaintiff's New York City claims should also fail.  Defendant asserts that the Court must likewise dismiss the New York City claims because Plaintiff lacks standing or a valid federal claim.  Def. Mem. at *16.  However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under either 12(b)(1) or 12(b)(6). *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30, 2019) ("[a] court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (citing 28 U.S.C. §1367(a)). Accordingly, Defendant's request to obtain dismissal of the New York City claim should likewise be denied.

## V.    CONCLUSION

For the reasons set forth above, the Court should respectfully deny the Motion to Dismiss in its entirety.[8]

DATED:  New York, New York                    **MIZRAHI KROUB LLP**
         March 7, 2022

                                           /s/ Edward Y. Kroub
                                       ——————————————————
                                           EDWARD Y. KROUB

---

[8] In the alternative, should the motion be granted, Plaintiff respectfly requests leave to replead. *Cortec Industries, Inc., v. Sum Holding L.P.,* 949 F.2d 42 (2d. Cir. 1991).

EDWARD Y. KROUB
JARRETT S. CHARO
WILLIAM J. DOWNES
200 Vesey Street, 24th Floor
New York, NY  10281
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com
jcharo@mizrahikroub.com
wdownes@mizrahikroub.com

*Attorneys for Plaintiff*