UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
YENSY CONTRERAS, Individually, and on:
Behalf of All Others Similarly Situated,     :     Case No.: 1:21-cv-09096-VSB
                                           :
                   Plaintiff,     :
                                           :
                   v.     :
                                         :
TD ASSOCIATES, LLC,     :
                                         :
                   Defendant.     :
-------------------------------------------------------------x

**Defendant's Memorandum in Support of its Fee Petition**

**Table of Contents**

Table of Authorities ............................................................................................................ ii

Preliminary Statement ......................................................................................................... 1

Background .......................................................................................................................... 2

Argument ............................................................................................................................. 3

     I.     TackleDirect is Entitled to Attorneys' Fees and Costs Under the ADA.................. 3

     II.    TackleDirect is Entitled to Attorneys' Fees and Costs from Plaintiff's Counsel as Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power ........................................................................................................................ 9

     III.   TackleDirect is Entitled to Recover its Reasonable Attorneys' Fees and Costs................................................................................................................... 15

Conclusion ........................................................................................................................ 20

# Table of Authorities

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008)............................................................................. 16

*Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31 (S.D.N.Y. 2015)............................. 16-17

*Billybey Marina Serv., LLC v. Bouchard Trans. Co., Inc.,* 2021 WL 4950835 ......................... 19

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..................................................................... 10

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) .................................................. 4, 9

*Cristian Sanchez v. Welcome Skateboards Inc.*, No. 1:21-cv-2598 (KPF) (Failla, J.)................... 14

*Crown Awards, Inc. v. Discount Trophy & Co.,* 564 F. Supp. 2d 290, (S.D.N.Y. 2008) ........................................................................................................... 16, 18

*DeCastro v. City of New York*, 2017 WL 4386372 (S.D.N.Y. Sept. 30, 2017)........................... 18

*Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 F. App'x 596 (5th Cir. 2005) ............................... 5

*Dutton. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986) ...................................... 9

*EEOC v. J.B. Hunt Transp., Inc.*, 75 F. App'x 853 (2d Cir. 2003) ........................................... 4, 5

*Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012) ............................................. 10, 15

*Fox v. Vice*, 563 U.S. 826 (2011)...................................................................................... 16

*Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165 (S.D.N.Y. 2018) ...................................... 16

*Guglielmo v. Nebraska Furniture Mart, Inc.*, 2021 WL 4124660 (S.D.N.Y. Sept. 9, 2021).................................................................................... 3, 5, 6, 7

*Hamer v. Lake County,* 819 F.2d 1362 (7th Cir. 1987) ......................................................... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................... 17, 18

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir. 2018)........................................ 11

*In re Engle Cases*, 283 F. Supp. 3d 1174 (M.D. Fla. 2017) ................................................... 10, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002)....................................................................................................... 10

*Indep. Project, Inc. v. Vetresca Bros. Constru. Co.*, 397 F. Supp. 3d 482
    (S.D.N.Y. 2019) ............................................................................ 15-16, 17, 19

*Int'l Techs. Mkt., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361 (2d Cir. 2021)...................................... 11

*Juscinska v. Meson Sevilla, Ltd.*, 2021 WL 706548 (S.D.N.Y. Feb. 23, 2021)............... 17, 18, 19

*LeBlanc-Sternberg v. Fletcher,* 143 F.3d 765 (2d Cir. 1998)............................................................. 5

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011) .................................................. 16

*Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986)........................................................... 10

*Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100 (2d Cir. 2001)............................................ 3, 4, 9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986).......................................................................................... 16

*Rabin v. Dow Jones & Co., Inc.*, 665 F. App'x. 21 (2d Cir. 2016) ............................................ 11

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) .................................................................... 9

*Rock v. Enfants Riches Deprimes, LLC*, 2020 WL 468904
    (S.D.N.Y Jan. 29, 2020)............................................................................ passim

*Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997) ............................................................................ 9

*Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323 (2d Cir. 1999) ................................. 10

*Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp. 2d 795 (N.D. Tex. 1999)................. 4, 5

*Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923 (10th Cir. 2001) ............................ 5

*United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338 (2d Cir. 1991) ...................................... 9

*Usherson v. Bandshell Artis Mgmt.*, 2020 WL 3483661 (S.D.N.Y June 10, 2020) .............. passim

*Veneziano v. Long Island Pipe Fab. & Supply Corp.*, 238 F. Supp. 2d 683
    (D.N.J. 2002)............................................................................................. 4

*Watson v. County of Yavapai*, 240 F. Supp. 3d 996 (D. Ariz. 2017)........................................... 4, 5

*West v. Town of Jupiter Island*, 146 F. Supp. 2d 1302 (S.D. Fla. 2001) ...................................... 7

**Statutes**

28 U.S.C. § 1927.............................................................................................. passim

42 U.S.C. § 12181 ..................................................................................................... 1

42 U.S.C. § 12205 ........................................................................................ 1, 3, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 2

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2

Fed. R. Civ. P. 54(d)(2) ........................................................................................ 1

**Other Authorities**

H.R. Doc. No. 25, 27th Cong., 3d Sess., 21–22 (1842) ...................................... 9

## Preliminary Statement

Defendant TD Associates LLC (TackleDirect) has filed a motion for an order awarding TackleDirect its reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 12205, and as sanctions against the plaintiff's counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent power. This motion is based upon the accompanying declarations of Peter Brann (Brann Dec.) and Hannah Wurgaft (Wurgaft Dec.).

In brief, it should have been apparent from the beginning to Plaintiff Yensy Contreras (Plaintiff) and his counsel that this Court lacked subject matter jurisdiction because Plaintiff lacked standing to pursue his alleged claim, and that this Court lacked personal jurisdiction over TackleDirect. And, if it wasn't crystalline before, once TackleDirect moved to dismiss the original complaint, Plaintiff chose poorly by moving to amend his cut-and-paste complaint in a trivial fashion instead of dismissing the case. Once TackleDirect moved to dismiss the amended complaint, Plaintiff initially opposed the motion (all of which necessitated two additional briefs and an additional declaration from TackleDirect), before acceding to the inevitable and dismissing his case with prejudice.

Moreover, Plaintiff did not have *any* intention of litigating the merits of his alleged claim under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.*, against TackleDirect—once TackleDirect chose to litigate instead of settling this case, Plaintiff dropped this case like he has done in numerous other cases. Plaintiff has not litigated any of the 146 cases he has filed in this district, and indeed, he even has dismissed many cases in which the defendant defaulted. Finally, the plaintiff's counsel generally has not litigated the hundreds of other, similar cases filed in this district. This conduct—simply filing this and other lawsuits without any intention of litigating them in order to extract quick cost-of-litigation settlements—is sanctionable.

**Background**

Using virtually identical language he used in his other 145 complaints filed between November 3, 2021, and January 18, 2022, Plaintiff filed this putative class action on November 3, 2021, against TackleDirect, which sells fishing gear, accessories, and apparel through a single store on the Jersey shore, its toll-free telephone number, and its website, claiming that its website was inaccessible to blind people like Plaintiff. Brann Dec. ¶ 11; ECF No. 1. On January 6, 2022, TackleDirect moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), supported by a declaration of its co-founder (Gill Dec.) that described TackleDirect's lack of any meaningful connection to New York, and explained everything TackleDirect had done to make its website accessible and to address Plaintiff's complaints (which TackleDirect did not believe were valid). ECF Nos. 12, 12-1.

On January 19, 2022, Plaintiff filed an amended complaint, tweaking in minor respects a couple paragraphs in the complaint, mooting the motion to dismiss. ECF No. 18. On February 11, 2022, TackleDirect filed a motion to dismiss the amended complaint, accompanied by a declaration (Gill Supp. Dec.) that addressed the minor changes in the complaint, again disputing that the TackleDirect website was inaccessible, and noting that Plaintiff had filed another 50 virtually identical complaints since TackleDirect had filed its first motion to dismiss. ECF Nos. 25–26. On March 7, 2022, Plaintiff opposed the motion to dismiss, but did not submit a declaration from Plaintiff responding to *any* of the facts relating to standing, and did not contest *any* of the facts relating to personal jurisdiction, relying instead on a declaration from a purported expert claiming different accessibility issues that were not asserted in either the complaint or the amended complaint. ECF Nos. 29, 30-5. On March 11, 2022, TackleDirect completed briefing on the motion to dismiss by filing its reply brief. ECF No. 31.

Although the next thing that happened in *this* case was that Plaintiff dismissed this case with prejudice on August 11, 2022, ECF No. 32, that was not the *next* thing that happened. Meanwhile, a different plaintiff represented by the same plaintiff's counsel filed a virtually identical complaint against another client represented by TackleDirect's counsel. Brann Dec. ¶ 5. After that defendant filed a motion to dismiss the amended complaint in that case, which was similar to the motions to dismiss filed in this case, the plaintiff's counsel dismissed that case with prejudice less than a week later on July 14, 2022. *Id*. Additionally, after TackleDirect's counsel filed a letter motion on July 15, 2022, to participate as *amicus curiae* in another case brought by the plaintiff's counsel in which the defendant had defaulted, rather than respond to the letter motion, the plaintiff's counsel also dismissed that case with prejudice on July 20, 2022. *Id*. ¶¶ 6–7. Following these dismissals, TackleDirect's counsel asked the plaintiff's counsel to dismiss this case too, which they finally did on August 11, 2022. *Id*. ¶ 8; ECF No. 32.

Against this background, we now turn to TackleDirect's motion for attorneys' fees and costs, and for sanctions.

**Argument**

**I.     TackleDirect is Entitled to Attorneys' Fees and Costs under the ADA.**

"The ADA provides that a district court 'in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (ellipsis added by court and quoting 42 U.S.C. § 12205). As a threshold matter, there is no doubt that following Plaintiff's dismissal of this matter with prejudice, TackleDirect is a prevailing party. *See Guglielmo v. Nebraska Furniture Mart, Inc.*, 2021 WL 4124660, *3–4 (S.D.N.Y. Sept. 9, 2021) (defendant who prevailed in a website accessibility case on standing grounds was prevailing party).

3

Because the language in the ADA is "nearly identical to the analogous provision governing attorney's fees" awards in Title VII cases, the court applies the same standard in considering attorneys' fee claims under the ADA. *Parker*, 260 F.3d at 111. "Under that standard, fees should be awarded to prevailing *defendants* only when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.'" *Id.* (emphasis and ellipsis added by court and quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

This standard may be met even where an action was "not brought in subjective bad faith." *EEOC v. J.B. Hunt Transp., Inc.*, 75 F. App'x 853, 854 (2d Cir. 2003) (ADA case) (quoting *Christiansburg*, 434 U.S. at 421). "The Court need not find subjective bad faith on the plaintiff's part to award fees to the prevailing defendant, but if the plaintiff is found to have brought or continued his claim in bad faith, 'there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.'" *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp. 2d 795, 802 (N.D. Tex. 1999) (awarding defendant fees under ADA) (quoting *Christiansburg*, 434 U.S. at 422).

"The *Christiansburg* test is intended to strike a balance between the need to eliminate the possible chilling effect on civil rights plaintiffs, who may decide not to pursue a meritorious suit for fear of suffering a fee award, and the goal of deterring plaintiffs from filing frivolous claims." *Veneziano v. Long Island Pipe Fab. & Supply Corp.*, 238 F. Supp. 2d 683, 689 (D.N.J. 2002) (awarding defendant fees under ADA) (quoting *Hamer v. Lake County,* 819 F.2d 1362, 1367 (7th Cir. 1987)). Accordingly, "[f]ee awards against plaintiffs will be rare and few cases will require close inquiry." *Watson v. County of Yavapai*, 240 F. Supp. 3d 996, 1003 (D. Ariz. 2017) (awarding defendant fees under ADA).

Nevertheless, courts should have discretion to award defendants their fees in those atypical cases because "[b]ringing ADA claims that are frivolous, unreasonable, or without foundation debases the ADA's protections for those it is designed to serve." *Id*. at 1004; *see also id*. ("The sheer cost of groundless litigation raises the specter of extortion."); *Seawright*, 39 F. Supp. 2d at 803 ("Regardless of whether Seawright pursued this frivolous, groundless, and unreasonable lawsuit because of some vendetta against his former employer or as merely a shakedown to extract a settlement, the Court concludes that he initiated and then continued to pursue this lawsuit in bad faith."); *cf. also Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 F. App'x 596, 604–605 (5th Cir. 2005) (awarding defendant fees under ADA); *Twilley v. Integris Baptist Med. Ctr., Inc.*, 16 F. App'x 923, 925–26 (10th Cir. 2001) (same).

> A determination of whether the prevailing defendant is entitled to attorney's fees "is not a purely factual inquiry ... [but instead] requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law. Thus, such a determination is ordinarily reviewed not for clear error but rather for abuse of discretion."

*J.B. Hunt*, 75 F. App'x at 854 (ellipsis and brackets added by court and quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998)).

Although a high standard, TackleDirect's fee petition clears this bar. We compare this case to *Guglielmo v. Nebraska Furniture Mart, Inc.*, 2021 WL 4124660 (S.D.N.Y. Sept. 9, 2021), where the court denied an ADA fee request in a website accessibility case. *First*, TackleDirect has stronger arguments here that Plaintiff lacked standing to assert his claim and that this Court lacked personal jurisdiction over TackleDirect. *Second*, unlike this case, the *Guglielmo* plaintiff did not file an amended complaint and thus continue to pursue the case after it had become apparent that the case was meritless. *Third*, the *Guglielmo* court did not have available the evidence submitted in this case that the plaintiff there had no good-faith intention of litigating the merits of his claim.

Although the *Guglielmo* court found that the plaintiff's vague allegations stated—just barely—a *prima facie* case, *id*. at *5, the same cannot be said in this case. TackleDirect's co-founder flatly rejected Plaintiff's allegations of inaccessibility as nonsensical and incorrect. ECF No. 12-1 (Gill Dec.) ¶¶ 25–30. Although the defendant in *Guglielmo* conceded that its website had not been accessible, *Guglielmo*, 2021 WL 4124660, at *5, TackleDirect admitted no such thing. Gill Dec. ¶¶ 17–24.

Furthermore, the *Guglielmo* court did not address the standing prong that has proven to be the Achilles heel in these types of cases, namely, credible evidence that the plaintiff intends to return to the allegedly inaccessible website. Significantly, Plaintiff in this case never submitted a declaration stating that he had any intention to ever return to TackleDirect's website. After TackleDirect raised this issue in its motion to dismiss the original complaint, ECF No. 12 at 12–14, Plaintiff amended his complaint to claim he was interested in purchasing a specific product, but it was not even an accurate description of a product that TackleDirect sold. ECF No. 26 (Gill Supp. Dec.) ¶¶ 18–19.

Similarly, the *Guglielmo* court did not address in detail the defendant's personal jurisdiction argument because it had dismissed the case based on standing, except to note that the defendant's website contained "conflicting language" concerning its delivery policy to New York. *Guglielmo*, 2021 WL 4124660, at *5. It is apparent that the defendant in *Guglielmo* did not make the full-throated personal jurisdiction argument made in this case, namely, that Plaintiff's mere viewing of TackleDirect's website in New York is not transacting business under New York's long-arm statute, and if it was, it would violate the Due Process Clause. ECF No. 12 at 14–19. Significantly, Plaintiff in this case never challenged any of facts asserted by TackleDirect's co-founder relating to personal jurisdiction. Gill Dec. ¶¶ 4–16.

It should have been apparent to Plaintiff and his counsel after TackleDirect filed its motion to dismiss the original complaint that this lawsuit was frivolous, unreasonable, or without foundation. Unlike the plaintiff in *Guglielmo*, Plaintiff here doubled down and filed an amended complaint. ECF No. 18. When TackleDirect moved to dismiss the amended complaint, it squarely addressed the minor tweaks added to the complaint to prop up Plaintiff's standing to bring this case, once again explaining that these new allegations were nonsensical and not evidence of any barrier to the website. Gill Supp. Dec. ¶¶ 6–16. Rather than throwing in the towel, Plaintiff opposed the motion to dismiss, but did not submit a declaration from Plaintiff how anything alleged in the amended complaint was a barrier to *his* access to the website. TackleDirect was forced to file a reply brief. Continuing a lawsuit after it was apparent that it was untenable, which Plaintiff has done here, is grounds for awarding a defendant its fees under the ADA. *See West v. Town of Jupiter Island*, 146 F. Supp. 2d 1302, 1303 (S.D. Fla. 2001) (awarding defendant fees under ADA).

The final distinction between *Guglielmo* and this case is that there is substantial evidence that Plaintiff here had no intention of litigating the merits of his ADA claim against anyone. Almost all of Plaintiff's cases settled quickly, which usually happens in all of these website accessibility cases nationwide given the relative cost of defense and settlement. Brann Dec. ¶ 12. For defendants that did not quickly capitulate, Plaintiff often did not litigate his claims. *Id*. ¶ 13. Not only did Plaintiff dismiss his lawsuit against TackleDirect after it filed a motion to dismiss, according to Pacer docket reports, Plaintiff apparently also did so in four other cases. *Id*. ¶ 14.

Although all 146 cases filed by Plaintiff were filed as putative class actions, no motions for class certification were filed or granted in any of the lawsuits. *Id*. ¶ 15. Likewise, although all 146 lawsuits sought injunctive relief, no motions for preliminary or permanent injunctions were filed or granted in any of the lawsuits. *Id*. Although Plaintiff sometimes filed oppositions to motions to

7

dismiss, he did not file any substantive motion of any issue in any of the 146 lawsuits. *Id*. ¶¶ 15–16. There is no indication that discovery was conducted in any of Plaintiff's 146 lawsuits. *Id*. ¶ 17.

In many of Plaintiff's 146 cases, the defendant never answered the complaint or otherwise appeared. *Id*. ¶¶ 18–21. Of course, in ordinary litigation, plaintiffs are anxious to obtain default judgments awarding them all of their requested monetary and non-monetary relief that they then can enforce against the defaulting defendant. Not so here.

In two of Plaintiff's cases assigned to this Court, the Court dismissed the case when Plaintiff failed to file a motion for a default judgment, as ordered by the Court. *Id*. ¶ 19. In 12 other cases filed by Plaintiff assigned to 10 other judges in this district in which the defendant defaulted, the cases were dismissed, no default judgment hearing was held, no pleading seeking final relief was filed, no motion seeking (or disclosing) Plaintiff's actual attorneys' fees was filed, and no final relief was awarded. *Id*. ¶¶ 20–21. Plaintiff's failure to seek enforceable final default judgments against any defaulting defendants speaks volumes about his lack of interest in actually litigating these cases and obtaining any meaningful relief from the Court.

Indeed, other than a couple of settlements that were fashioned as consent orders because that was the format some defense counsel prefer, no court entered final judgment in favor of, or awarded any relief to, Plaintiff. *Id*. ¶ 22. In sum, in cases filed on behalf of Plaintiff Yensy Contreras in which the defendants did not agree to a quick settlement, whether litigated or simply ignored by the defendants, the cases invariably were dismissed. *Id*. ¶ 23.

Taken together, these facts establish that Plaintiff's ADA lawsuit against TackleDirect was filed and pursued in bad faith, and was frivolous, unreasonable, or groundless, or was continued to be litigated after it clearly became so, thus warranting the award of attorneys' fees and costs to

the defendant under *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100 (2d Cir. 2001), and

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).

## II. TackleDirect is Entitled to Attorneys' Fees and Costs from Plaintiff's Counsel as Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power.

"Under § 1927, any attorney who 'so multiplies the proceedings in any case unreasonably

and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct.'" *Rock v. Enfants Riches Deprimes,*

*LLC*, 2020 WL 468904, *2 (S.D.N.Y Jan. 29, 2020) (quoting 28 U.S.C. § 1927). As the Supreme

Court has explained, Section 1927 was prompted by conduct similar to what prompted

TackleDirect to file this motion:

> A letter from the Secretary of the Treasury to the House of Representatives in 1842
> suggests that the provision was prompted by the practices of certain United States
> Attorneys. H.R. Doc. No. 25, 27th Cong., 3d Sess., 21–22 (1842). Some of those
> officers, who were paid on a piecework basis, apparently had filed unnecessary
> lawsuits to inflate their compensation.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759 n.6 (1980).

"These sanctions should only be imposed 'when there is a finding of conduct constituting

or akin to bad faith.'" *Rock*, 2020 WL 468904, at *2 (quoting *Sakon v. Andreo*, 119 F.3d 109, 114

(2d Cir. 1997)); *see also United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.

1991) ("Bad faith is the touchstone of an award under this statute."). "To impose sanctions under

Section 1927, a court must make factual findings with a "high degree of specificity[.]" *Usherson*

*v. Bandshell Artis Mgmt.*, 2020 WL 3483661, *10 (S.D.N.Y June 10, 2020) (quoting *Dutton. Pac.*

*Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). The Court, however, "may infer bad

faith when counsel's 'actions are so completely without merit as to require the conclusion that they

must have been undertaken for some improper purpose[.]'" *Usherson*, 2020 WL 3483661, at *10

(quoting *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999)) (footnote omitted).

"In determining whether an attorney acted in bad faith, a court may rely on the totality of the circumstances." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1225 (M.D. Fla. 2017) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189–90 (3d Cir. 2002)). "Even if discrete instances of an attorney's conduct would not have been sanctionable, a court may nevertheless find bad faith based on the attorney's conduct 'considered as a whole.'" *In re Engle Cases*, 283 F. Supp. 3d at 1225 (quoting *In re Prudential*, 278 F.3d at 189–90).

"Similarly, awarding sanctions under the Court's inherent power requires finding that the offending party 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Rock*, 2020 WL 468904, at *2 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp*., 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Schlaifer Nance,* 194 F.3d at 336). "The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is 'similar to that necessary to invoke the court's inherent power.'" *Enmon*, 675 F.3d at 143 (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986)).

"In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon*, 675 F.3d 143 (ellipsis added by court and quoting *Oliveri*, 803 F.2d at 1273). In this case, that is a

distinction without a difference because these lawsuits appear to be lawyer-driven, and thus the entity that should be sanctioned is the plaintiff's counsel.

"For decades, we have consistently made clear that the only prerequisites to a district court imposing monetary sanctions under its inherent power is that a party advanced a colorless claim and did so for improper reasons." *Int'l Techs. Mkt., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (collecting cases). "Those elements can be satisfied by even a single bad-faith filing. *See, e.g.*, *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018) (upholding sanctions against a party merely for "initat[ing] th[e] lawsuit" in bad faith)." *Int'l Techs. Mkt.*, 991 F.3d at 369 (brackets added by court and other citation omitted); *cf. also Rabin v. Dow Jones & Co., Inc.*, 665 F. App'x. 21, 23 (2d Cir. 2016) ("The district court found that plaintiff pleaded no facts to support the conclusory allegation of defendant's liability for a third-party's fraud; and that even if the defendant had an affirmative duty to act when it became aware of the fraud (which appellants now aver was a good-faith argument to extend the law), plaintiff's own amended complaint establishes that defendant *did* act to warn its customers. The district court therefore concluded that the claims had no objectively reasonable basis and that the first requirement for the imposition of sanctions was satisfied. We find no error in that conclusion.") (emphasis added by court).

"Ultimately, the decision whether to impose sanctions is left to the Court's discretion." *Usherson*, 2020 WL 3483661, at *10 (citation omitted). After considering the totality of the circumstances, the Court should exercise its discretion to sanction the plaintiff's counsel and award TackleDirect its reasonable attorneys' fees and costs incurred in fending off this lawsuit.

Before turning to the totality of the conduct of the plaintiff's counsel, it should be noted that as counsel of record in this case, and in all of the 146 cases filed on behalf of Plaintiff Yensy

Contreras, the plaintiff's counsel is responsible for continuing to pursue this case after it became obviously untenable following TackleDirect's motion to dismiss the original complaint. And the plaintiff's counsel likewise is responsible for the failure of Plaintiff to meaningfully litigate any of the cases they filed on his behalf. Thus, the arguments above that seek attorneys' fees and costs against Plaintiff under the ADA also ground the request for sanctions against the plaintiff's counsel under Section 1927 and the Court's inherent power.

Although sanctions under Section 1927 or the Court's inherent power can only be imposed for conduct in this case, in evaluating that conduct, the Court can, and should, also consider all of the website accessibility cases filed by plaintiff's counsel. In *Rock* and *Usherson* cited above, each court considered Richard Leibowitz's entire sordid litigation history before imposing sanctions in the case before it, and in *Engle* cited above, the court considered the hundreds of other meritless tobacco cases filed by plaintiff's counsel before imposing sanctions. Thus, in this case, the Court should consider not only the history of this case and the 145 other cases filed on behalf of Plaintiff Yensy Contreras, that also the many other virtually identical cases filed by the plaintiff's counsel on behalf of other plaintiffs. Although the entire picture of the plaintiff's counsel prior litigation history is not as complete, the snapshots portray the same image that emerges when reviewing Plaintiff's 146 lawsuits.

The plaintiff's counsel appears to have filed over 1,000 website accessibility cases in this district, which is more than anyone else, helping to make this district the hotspot of such cases in the country. Brann Dec. ¶¶ 24–25. Yet, except for one case, there is little, if any, evidence that any of these cases were ever litigated. *Id*. ¶ 25. Defense counsel could not identify any cases in which the plaintiff's counsel actually litigated cases they filed on behalf of others (other than opposing motions to dismiss before some judges in this district). *Id*. ¶¶ 26, 30–41.

Prior to the filing of this motion, the plaintiff's counsel was asked to identify *any* case filed on behalf of *any* plaintiff in which *any* of the following evidence of actual litigation occurred, and *they did not identify a single such case*:

- Any case they lost on a motion to dismiss that they appealed to the Second Circuit;
- Any case in which they served or responded to any discovery;
- Any case in which the plaintiff or anyone else was deposed;
- Any case in which they filed any substantive or dispositive motion;
- Any case in which they filed a motion for class certification;
- Any case in which they filed a motion for injunctive relief;
- Any case against a defaulting defendant in which they obtained a final judgment awarding them any relief;
- Any case that they tried to a judge or a jury.

*Id*. ¶ 27.

There is no indication that any counsel, including the plaintiff's counsel, took an appeal to the Second Circuit from dismissal of any of the website accessibility cases cited in TackleDirect's motions to dismiss. *Id*. ¶ 28. This enables the losing plaintiff, or the plaintiff's counsel on behalf of different plaintiffs, to continue to file hundreds of these website accessibility cases without the risk of the Second Circuit joining other circuits to kill the proverbial goose that is laying the golden egg. *Id*. In other words, by just walking away from the cases that are dismissed at the trial court level, the plaintiff's counsel can continue to file these cloned complaints and extract quick cost-of-litigation settlements.

Like this case, the plaintiff's counsel regularly dismissed cases filed on behalf of others in which the defendant defaulted. *Id*. ¶ 29. That includes at least a couple of cases assigned to this Court. *Id*. No cases filed by the plaintiff's counsel on behalf of others were identified in which the defendants defaulted and then the plaintiff's counsel proceeded to obtain a final default judgment on behalf of the plaintiff. *Id*. ¶ 30.

In terms of substantive motions, the same pattern continued. No cases filed by the plaintiff's counsel on behalf of others were identified in which the plaintiff's counsel filed a motion for class certification. *Id*. ¶¶ 25, 31. Other than the few instances in which the plaintiff's counsel sought, but later abandoned, a motion for relief against a defaulted defendant, no cases filed by the plaintiff's counsel on behalf of others were identified in which the plaintiff filed a motion for a preliminary or permanent injunction. *Id*. ¶¶ 25, 32. No cases filed by the plaintiff's counsel on behalf of others were identified in which the plaintiff's counsel filed a motion seeking a specific amount of attorneys' fees, which is significant because the monetary component of settlements of these cases are supposedly based on recovery of actual attorneys' fees incurred in bringing these cases. *Id*. ¶¶ 33–34. With one exception, no cases filed by the plaintiff's counsel on behalf of others were identified in which the plaintiff's counsel filed any motion for substantive relief. *Id*. ¶¶ 25, 35. Like this case, the plaintiff's counsel simply dismissed some cases filed on behalf of others when the defendants filed a motion to dismiss. *Id*. ¶ 36.

Turning to discovery, it becomes even more apparent that the plaintiff's counsel was loath to litigate the merits of their hundreds of lawsuits. With one exception, no cases filed by the plaintiff's counsel on behalf of others were identified in which the plaintiff's counsel sought any discovery from the defendant, and no such cases were identified in which the plaintiff responded to any written or oral discovery. *Id*. ¶¶ 25, 37–38. On the contrary, when defendants sought discovery, or even threatened to litigate the case, the response was to dismiss the lawsuit. *Id*. ¶¶ 39–41.

Perhaps the poster child of the plaintiff's counsel's unwillingness to litigate the merits of any of these website accessibility cases is *Cristian Sanchez v. Welcome Skateboards Inc.*, No. 1:21-cv-2598 (KPF) (S.D.N.Y.) (Failla, J.). In that case, the plaintiff's counsel opposed the motion to

dismiss, and the court *denied* the motion. Brann Dec. ¶ 41. But, after the defendant then answered and served discovery, the plaintiff's counsel dismissed the case with prejudice. *Id*. In other words, even when a court *denied* a motion to dismiss, if the defendant was prepared to litigate the case on the merits, the plaintiff's counsel instead would abandon the lawsuit.

The procedural history of the case against TackleDirect, and the 145 other cases filed on behalf of Plaintiff Yensy Contreras in the Southern District of New York, and the many other cases filed by the plaintiff's counsel on behalf of other plaintiffs, and the experience of defense counsel, and the conspicuous silence of the plaintiff's counsel concerning its past litigation experience, all lead inexorably to the conclusion that Plaintiff Yensy Contreras had *no* intention of litigating the merits of any alleged inaccessibility of TackleDirect's website, and that this lawsuit was simply an empty vehicle to extract a quick settlement. *Id*. ¶ 42.

Filing carbon-copy complaints with no intention of actually litigating the claims should mean that the claims lack a "colorable basis" under *Enmon v. Prospect Capital Corp*., 675 F.3d 138, 143 (2d Cir. 2012). Likewise, filing cut-and-paste complaints and using the threat of the cost of litigation to extract a settlement should mean that "the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Id*. Sanctions are warranted.

## III.    TackleDirect is Entitled to Recover its Reasonable Attorneys' Fees and Costs.

TackleDirect is entitled to recover its attorneys' fees and costs under the ADA, 42 U.S.C. § 12205, and is entitled to recover sanctions in the form of its attorneys' fees and costs under 28 U.S.C. § 1927 and this Court's inherent power. The only remaining question is what are TackleDirect's reasonable attorneys' fees and costs.

"A district court has considerable discretion in determining what constitutes a reasonable fee award." *Indep. Project, Inc. v. Vetresca Bros. Constru. Co.*, 397 F. Supp. 3d 482, 493 (S.D.N.Y.

2019) (awarding plaintiff fees under ADA) (citation omitted). "A district court calculates the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly billing rate." *Id.* (quoting *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 172 (S.D.N.Y. 2018), and citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "There is a 'strong presumption' that the lodestar represents a reasonable fee." *Crown Awards, Inc. v. Discount Trophy & Co.,* 564 F. Supp. 2d 290, 297 (S.D.N.Y. 2008) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563 (1986)).

The same approach applies to calculating attorneys' fees awarded as sanctions under Section 1927 and the Court's inherent power. "A well-accepted measure of sanctions for bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary is the opposing counsel's attorney's fees and costs." *Usherson*, 2020 WL 3483661, at *20 (citation omitted). "When analyzing a request for attorneys' fees, a court must determine the 'lodestar' amount, which is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case,' also known as the 'presumptively reasonable fee' in the Second Circuit." *Rock*, 2020 WL 468904, at *5 (quoting *Millea*, 658 F.3d at 166, and citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)).

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

"The party seeking attorneys' fees 'bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'" *Indep. Project,* 397 F. Supp. 3d at 493 (brackets added by court and quoting *Beastie Boys v. Monster Energy Co.*, 112 F.

Supp. 3d 31, 48 (S.D.N.Y. 2015), and citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (fee applicant must submit "evidence supporting the hours worked and rates claimed")). TackleDirect's counsel has submitted documentation of both the reasonableness of the hourly rates sought and the reasonableness of the hours spent. Wurgaft Dec. ¶¶ 4–17.

"A reasonable hourly rate is based on the current prevailing market rate for lawyers in the district in which the ruling court sits." *Indep. Project,* 397 F. Supp. 3d at 493–94 (cleaned up) (citations omitted). TackleDirect's fee petition easily satisfies this standard.

TackleDirect seeks $450 an hour for its lead counsel, who has litigated website accessibility cases across the country, and has 40 years' experience litigating complex and multi-million-dollar cases in state and federal trial courts in over 20 states, and on appeal in the U.S. Supreme Court, most of the U.S. Courts of Appeal (including the Second Circuit), and numerous state appellate courts. Wurgaft Dec. ¶ 7. This rate charged to TackleDirect is well within the range of customary rates awarded to experienced *plaintiff's* counsel in these types of cases in this district. *Id*. ¶ 9; *see also Indep. Project,* 397 F. Supp. 3d at 499 ("Other judges within this District have found the customary rate for experienced litigators ranges from about $400 to $600 per hour in civil rights and ADA cases.") (collecting cases); *Juscinska v. Meson Sevilla, Ltd*., 2021 WL 706548, *2 (S.D.N.Y. Feb. 23, 2021) (similar) (collecting cases). In cases in which attorneys' fees are awarded to *defendants* as sanctions, the hourly rates approved are often much higher than what is being sought in this case. *See, e.g., Usherson*, 2020 WL 3483661, at *20 (partner compensated at $855 an hour); *Rock*, 2020 WL 468904, at *5 (partner with 40 years' experience compensated at $913 an hour).

TackleDirect also seeks $285 an hour for the single associate who assisted lead counsel in this matter, and she has three years of experience in these types of cases, and other employment,

disability, and civil rights litigation. Wurgaft Dec. ¶ 8. This rate is approximately what is awarded to more junior plaintiff's counsel in these types of cases in this district, and is substantially below what is awarded to more junior defendant's counsel in cases in which sanctions are awarded. *Id*. ¶ 9; *see also DeCastro v. City of New York*, 2017 WL 4386372, *6 (S.D.N.Y. Sept. 30, 2017) ("Courts in this district generally award fees at hourly rates between $150 and $275 for junior associates at law firms specializing in civil rights.") (citations omitted); *Usherson*, 2020 WL 3483661, at *20 (defendant's associate with less than one-years' experience compensated at $315 an hour); *Rock*, 2020 WL 468904, at *5 (senior associate compensated at $575 an hour).

Finally, TackleDirect seeks $325 an hour for the associate of the firm that served as local counsel in this matter, and she has 14 years' experience defending public and private sector clients in civil rights, employment, and education matters, charging her clients this rate. Wurgaft Dec. ¶¶ 13–14. As the cases cited above demonstrate, this rate is well within the range of the hourly rates customarily awarded to counsel with comparable experience in this district.

Once the Court determines a reasonable hour rate, it must determine that TackleDirect "is seeking compensation only for 'hours reasonably expended on the litigation,' and not for 'hours that are excessive, redundant, or otherwise unnecessary.'" *Juscinska*, 2021 WL 706548, *2 (quoting *Hensley*, 461 U.S. at 433–34). TackleDirect has submitted an itemized accounting of the time billed by lead counsel and by local counsel in this matter. Wurgaft Dec. ¶¶ 10, 15; *id*. Exhibit A (lead counsel bills); *id*. Exhibit B (local counsel bills).

The itemized accounting demonstrates that this case was litigated efficiently, as one might expect with a team consisting of one partner, one associate, and one local counsel associate. *Cf. Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 298 (S.D.N.Y. 2008) (Plaintiff's firm "staffs its cases very efficiently—generally staffing the case with only one partner

and one associate from the firm.") (citations omitted). Lead counsel's firm billed a total of 94.8 hours on this matter up through the completion of briefing on the motion to dismiss the amended complaint, for a lodestar of $26,790.63, and local counsel's firm billed a total of 7.8 hours for a lodestar of $2,422.50.

Exercising billing judgment, these amounts do not include charges for time spent after briefing on the motion dismiss was completed, for additional counsel who did not enter a *pro hac vice* appearance in this case, for senior local counsel who supervised and filed the pleadings in this matter, for occasional paralegal assistance, or for other charges, such as electronic research. This fee petition also does not include any time spent on preparing this fee petition, which TackleDirect would seek if this fee petition is granted. Wurgaft Dec. ¶¶ 10, 15. TackleDirect seeks to be awarded all of its requested lodestar, which is the "presumptively reasonable" award. *Indep. Project,* 397 F. Supp. 3d at 493 (citations omitted).

TackleDirect should also be entitled to recover its trivial out-of-pocket costs. *See Juscinska*, 2021 WL 706548, *2 ("Courts generally award reasonable out-of-pocket costs incurred by attorneys and charged to their clients.") (quotation omitted). TackleDirect only seeks to recover the $400 it spent on *pro hac vice* admission fees for its two out-of-state counsel. Wurgaft Dec. ¶ 10.

In sum, TackleDirect seeks recovery of its reasonable attorneys' fees and costs in the amount of $29,613.13, and seeks permission to file a supplemental petition seeking recovery of its reasonable attorneys' fees incurred in filing this fee petition. *Cf. Billybey Marina Serv., LLC v. Bouchard Trans. Co., Inc.,* 2021 WL 4950835, *5 ("It is established that in a proceeding to determine an award of attorney's fees, an attorney may include his fees for preparing the petition seeking litigation costs.") (contractual right to attorneys' fees) (cleaned up) (citations omitted).

## Conclusion

Defendant TD Associates, LLC respectfully requests that its motion for an award of attorneys' fees and costs and for sanctions be granted.

Dated: August 25, 2022

Respectfully submitted,

Fredric P. Galin
Methfessel & Werbel, P.C.
2025 Lincoln Hwy., Suite 600
Edison, NJ 08818
(732) 248-4200
gallin@methwerb.com

/s/ Peter J. Brann
Peter J. Brann
(admitted *pro hac vice*)
Hannah L. Wurgaft
(admitted *pro hac vice*)
Brann & Isaacson
184 Main Street, 4th Floor
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant*