UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
YENSY CONTRERAS, *on behalf of himself*                     :
*and all other persons similarly situated*,                 :
                                                            :
                                    Plaintiff,              :         21-CV-9096 (VSB)
                                                            :
                    - against -                             :         **OPINION & ORDER**
                                                            :
                                                            :
                                                            :
TD ASSOCIATES, LLC,                                         :
                                                            :
                                    Defendant.              :
                                                            :
------------------------------------------------------------X

Appearances:

Edward Y. Kroub
Mizrahi Kroub LLP
New York, New York
*Counsel for Plaintiff*

Peter J. Brann
Hannah L. Wurgaft
Brann & Isaacson
Lewiston, Maine

Fredric Paul Gallin
Methfessel & Werbel, PC
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Yensy Contreras filed this lawsuit against Defendant TD Associates, LLC ("Defendant" or "TackleDirect"), bringing claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and violations of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq*. After the motion to dismiss briefing was complete but before I issued an opinion, Plaintiff dismissed this action in its

entirety with prejudice. Before me is Defendant's motion seeking attorney's fees and costs under Rule 54(d)(2) and 42 U.S.C. § 12205, as well as sanctions against Plaintiff's counsel under 28 U.S.C. § 1927, and the court's inherent power. For the reasons that follow, Defendant's motion is DENIED.

## I.  Factual Background

Plaintiff, a blind, visually-impaired person, alleges that he visited Defendant's website, www.tackledirect.com, ("Website"), but that it was inaccessible. (Doc. 18 ("Am. Compl.") ¶ 1.) Plaintiff visited the Website because it sold fishing equipment. (*Id.* ¶ 2.) Defendant is an online retail company that owns and operates the Website. (*Id.* ¶ 20.) Plaintiff alleges he visited the Website on October 30, 2021, December 7, 2021, January 15, 2022, and January 16, 2022. (*Id.* ¶ 2.) Plaintiff attempted to purchase fishing equipment, including a Shimano Sedona FI Spinning Reel, from the Website, but was unable to complete the purchase because the Website was not compliant with Title III of the ADA, 42 U.S.C. § 12181, *et seq.* (*Id.* ¶¶ 24–25.) Plaintiff cites the following barriers to his access:

> (a) The screen reader cannot read sections of the website banner, delaying Plaintiff's ability to navigate the website as a sighted person would.
>
> (b) The screen reader cannot read promotional images on the website, delaying Plaintiff's ability to make an informed choice as to products available on the website.
>
> (c) Images of products on the website are not described in text, making it impossible for the screen reader to describe such products and thereby impeding Plaintiff's ability to make an informed choice as to products available on the website.
>
> (d) The screen reader skips over text when navigating with the Tab key, delaying Plaintiff's ability to navigate the website as a sighted person would.
>
> (e) The screen reader stops reading text on the website in mid-sentence, delaying Plaintiff's ability to navigate the website as a sighted person would.
>
> (f) The screen reader does not read submenu headers, delaying Plaintiff's ability to navigate the website as a sighted person would.

    (g) The screen reader does not read when an item has been added to the website's "Cart" function, delaying Plaintiff's ability to navigate the website and make a purchase as a sighted person would.

    (h) The screen reader reads text which is not otherwise visible on the page, causing confusion and delaying Plaintiff's ability to navigate the website as a sighted person would.

    (i) The screen reader does not read the "checkout" button to allow Plaintiff to complete a purchase. This impedes and delays Plaintiff's ability to make a purchase as a sighted individual would.

(*Id.* ¶ 2(a)–(i).)

## II. **Procedural History**

Plaintiff filed the initial complaint in this action on November 3, 2021. (Doc. 1.) On January 6, 2022, Defendant filed a motion to dismiss. (Doc. 12.) On January 19, 2022, Plaintiff filed the Amended Complaint. (Am. Compl.) On January 25, 2022, Defendant asked that I deny its initial motion to dismiss as moot and grant a two-week extension to file a revised motion. (Doc. 22.) I granted that motion, (Doc. 24), and Defendant filed its revised motion to dismiss on February 11, 2022. (Doc. 25 ("MTD").) On March 7, 2022, Plaintiff filed a memorandum of law in opposition. (Doc. 27 ("MTD Opp.").) Defendant filed its reply memorandum of law on March 11, 2022. (Doc. 31.)

On August 11, 2022, Plaintiff voluntarily dismissed this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. 32.) The case was closed. On August 25, 2022, Defendant moved for an award of attorney's fees, as well as sanctions against Plaintiff's counsel. (Doc. 33 ("Def. Mem.").) Plaintiff filed its opposition on October 28, 2022. (Doc. 42 ("Pl. Opp.").) Defendant filed its reply memorandum on November 15, 2022. (Doc. 47 ("Def. Reply").)

## III.  Discussion

### A.  *Attorney's Fees and Costs Under ADA*

The ADA provides that the district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. To prevent a chilling effect on meritorious claims, "fees should be awarded to prevailing *defendants* only when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (emphasis in original) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

#### 1. Prevailing Party

The threshold question in an ADA attorney's fees inquiry is whether the moving party prevailed in the underlying litigation. Here, Plaintiff voluntarily dismissed the case with prejudice pursuant to Rule 41(a)(1)(A)(i). (Doc. 32.) Defendant contends that a dismissal with prejudice, which "prevent[s] the plaintiff from obtaining any judicial relief," (Def. Reply at 3), is sufficient to qualify defendant as prevailing for attorney's fees purposes.

"[A] defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016). To prevail for purposes of an attorney's fees award, the litigation must "create [a] material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 782–83 (1989)). "A voluntary dismissal of an action with prejudice works such alteration, because it constitutes an adjudication on the merits for purposes of res judicata, and any action so dismissed could not be brought again." *Carter v. Inc. Vill. of Ocean Beach*,

4

759 F.3d 159, 165 (2d Cir. 2014) (internal quotation marks omitted); *see also Opoku v. Cnty. of Suffolk*, 123 F. Supp. 3d 404, 412 (E.D.N.Y. 2015) ("[A] defendant in an action that is voluntarily dismissed with prejudice is a prevailing party for the purposes of determining whether attorney's fees are warranted").  As Plaintiff here dismissed the action against Defendant with prejudice, materially altering the legal relationship between the parties by foreclosing Plaintiff's ability to bring these claims against Defendant in the future, Defendant is the prevailing party.

### 2. Frivolous, Unreasonable, or Groundless Claims

Defendant argues that Plaintiff's claims cannot pass muster under *Christiansburg* because (a) Plaintiff lacked standing to assert his claim; (b) this Court lacked personal jurisdiction over Defendant; and (c) Plaintiff had no good-faith intent to litigate the merits of his claim. Determining whether Plaintiff's claims were frivolous, unreasonable, or groundless "requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998).  Courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22.  If reasonable minds could differ as to the merits, an award of attorney's fees to a defendant is inappropriate. *See EEOC v. J.B. Hunt Transp., Inc.*, 75 F. App'x 853, 854 (2d Cir. 2003) (summary order).

#### a. Standing

A plaintiff satisfies standing requirements to bring suit under Title III of the ADA only "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff

5

intended to return to the subject location." *Kriesler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013) (citation omitted).

Here, to demonstrate injury, Plaintiff alleges he visited the Website on at least four occasions and attempted to purchase a Shimano Sedona FI Spinning Reel. (Am. Compl. ¶¶ 2, 24–25.) Plaintiff identifies at least nine different barriers he experienced when trying to access the Website and explains how those barriers impaired his ability to complete the purchase. (*Id.* ¶¶ 2, 23.) Courts in this district have found similar allegations sufficient to establish injury. *See Sanchez v. NutCo, Inc.*, No. 20-CV-10107, 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022) (barriers on the website that resulted in plaintiff's "being unable to purchase pistachio nuts and other snack foods, take advantage of discounts and promotions, and understand different product details" was sufficient to establish injury); *Quezada v. U.S. Wings, Inc.*, No. 20-CV-10707, 2021 WL 5827437, at *4 (S.D.N.Y. Dec. 7, 2021) (plaintiff's inability "to determine information about defendant's products such as which sizes were available [or] was not able to purchase items" establishes injury); *Camacho v. Vanderbilt Univ.*, No. 18-CV-10694, 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019) (allegations that plaintiff "was unable to navigate the [w]ebsite because its navigation tabs were incompatible with his screen-reading software" and learn more about a college he was interested in attending established injury).

Next, Defendant argues that Plaintiff claimed that "he was interested in purchasing a specific product, but it was not even an accurate description of a product that TackleDirect sold," negating any claim of injury. (Def. Mem. at 6 (citing Doc. 26 ("Gill Supp. Decl.") ¶ 20).) Defendant's argument raises an issue of fact that would be inappropriate for resolution at the motion to dismiss stage, indicating that it is insufficient to render Plaintiff's standing argument frivolous as to injury-in-fact.

6

Although Defendant does not address the second requirement to establish standing—that the alleged discriminatory treatment will continue—in its attorney's fees arguments, I note that in the motion-to-dismiss briefing, Defendant asserted that it is committed to making the Website accessible and intends to introduce a new website in 2022.  (MTD 8–9 (citing Doc. 20 ("Gill Decl.") ¶¶ 18–19, 21–24, 33)).)  There is "a two-part test to determine when voluntary cessation may render a case moot:  if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (internal quotation marks omitted).  A defendant must meet the "'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Wu v. Jensen-Lewis Co., Inc.*, 345 F. Supp. 3d 438, 441 (S.D.N.Y. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  "This district has allowed the filing of affidavits and similar documentation to show if a defendant has fixed accessibility issues on their website." *Quezada*, 2021 WL 5827437, at *3 (citing *Angeles v. Grace Prods., Inc.*, No. 20-CV-10167, 2021 WL 4340427, *3 (S.D.N.Y. Sept. 23, 2021)).  Defendant provides two affidavits from Thomas Gill stating that Defendant fixed all the issues cited by Plaintiff, improved the Website's overall accessibility, and intends to introduce a new website in 2022.  (Gill Decl. ¶¶ 18–19, 21–24, 33; Gill Supp. Decl. ¶¶ 21–23.)  Plaintiff attaches a declaration that counters these assertions and attests that "issues with the identified website do exist and . . . those issues are a barrier to individuals with low to no vision." (Doc. 30 ("Kroub Decl.") Ex. 5.)  Due to these disputed facts, Defendant does not carry its burden to demonstrate mootness through voluntary

7

cessation. Plaintiff thus has a colorable argument that the alleged discriminatory treatment will continue.

With regard to the third prong, Defendant argues that Plaintiff has not credibly established that he intends to return to the Website. (Def. Mem. at 6.) Defendant's attorney's fees briefing asserts that Plaintiff failed to submit a declaration avowing his intention to return to TackleDirect's website at the complaint stage. (*Id.*) After Defendant raised this issue in its motion to dismiss, Plaintiff amended his complaint to assert that he was interested in purchasing a specific product from TackleDirect. (*Id.*) Defendant seems to imply that it was inappropriate and futile for Plaintiff to "double[] down" and amend his complaint, (*id.* at 7), but Plaintiff's amendment added material information, such as his intent to return to TackleDirect's website, that supported standing. Therefore, Plaintiff's filing of an amended complaint, which no party disputes was procedurally proper, cannot be recast as evidence that "plaintiff continued to litigate after it clearly became [frivolous, unreasonable, or groundless]." *Christiansburg*, 434 U.S. at 422.

At the motion-to-dismiss stage, Defendant argued that merely asserting the intent to return is insufficient for standing purposes, relying on a line of cases relating to ADA claims based on allegedly inaccessible physical locations. (MTD 9–10 (collecting cases).) In the context of website inaccessibility, however, courts in this district have adopted a less stringent standard. In these cases, "[t]he plaintiff need only establish 'a reasonable inference that he intended to return to the [w]ebsite.'" *Quezada*, 2021 WL 5827437, at *3 (citing *Camacho*, 2019 WL 6528974, at *11). In such cases, courts have deemed allegations sufficient that the plaintiff was interested in a particular item available on the website and that she intended to return to the website once the ADA violations were remedied. *See id*. at *4–5 (plaintiff's allegation that he

8

intended to return to the website to "purchase leather jackets and military branded apparel in the future" was sufficient to find intent to return (internal quotation marks omitted)); *NutCo, Inc.*, 2022 WL 846896, at *2 (allegations that plaintiff intended "to visit the site again in the future when the barriers are cured," along with the statement regarding "his particular interest in pistachio nuts[,]" the website's product, were sufficient (internal citations omitted)); *Camacho*, 2019 WL 6528974, at *10 (plaintiff established intent to return by stating "motivation for returning to visit the [w]ebsite in the future. . . should it be made accessible"). Plaintiff alleges that he intends to return to the Website once the barriers are remedied and that he is "highly interested in purchasing the fishing equipment offered by Defendant, specifically the Shimano Sedona FI Spinning Reel." (Am. Compl. ¶ 24.) These claims are sufficient to establish intent to return.

Based on the foregoing, I find that Defendant fails to establish that Plaintiff's standing arguments are frivolous or unreasonable.

b. Personal Jurisdiction

Defendant next argues that Plaintiff's claims are frivolous because this Court lacks personal jurisdiction over Defendant. In determining whether personal jurisdiction exists, courts "engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (internal quotation marks omitted). The statutory portion of the analysis "is determined by the law of the state in which the district court sits." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102–03 (2d Cir. 2006).

Here, Defendant's business is registered in New Jersey, (Am. Compl. ¶ 13), but Plaintiff contends that the Court has specific personal jurisdiction based on § 302(a)(1) of the New York long-arm statute. (MTD Opp. 18–20.) Pursuant to N.Y. C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) the defendant "transacts any business within the state"; and (2) the "cause of action aris[es] from" that business transaction. *See also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

"With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382 (1967)); *see also id.* at 247 (noting that this standard has been adopted from Supreme Court precedent analyzing the constitutional boundaries of personal jurisdiction). When considering whether to exercise personal jurisdiction over a defendant because of his or her activities through a website, courts have found that "[f]ully interactive websites, over which a seller knowingly transmits goods or services to users, are sufficient to confer personal jurisdiction pursuant to New York's long-arm statute." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 15 (S.D.N.Y. 2022) (citing *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418–19 (S.D.N.Y. 2009)). Defendant's Website is interactive and ensures delivery to New York. (*See* Am. Compl. ¶ 13; Kroub Decl. Exs. C, G.) This is sufficient to establish that Defendant transacts business in New York. *See Romero*, 580 F. Supp. 3d at 15–16 (finding first section 302(a)(1) prong met

10

where "Defendant transacts business in New York through its Website and ensures the delivery in New York of the goods sold").

Having established that Defendant transacts business in New York, the second prong of Section 302(a)(1) asks whether Plaintiff's cause of action arises from that business. A cause of action arises from a business transaction when there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) (internal quotation marks omitted); *accord Grand v. Schwarz*, No. 15-CV-8779, 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016).

Here, Defendant's Website ensures delivery to New York, which constitutes the business transacted in the forum state. Plaintiff attempted to access the Website to purchase a product to be delivered to New York but was unable to due to the barriers on the Website, giving rise to the claims in this lawsuit. As the business that Defendant transacts in New York forms the basis of Plaintiff's claims, there is a substantial relationship between the business Defendant transacts in the forum state and the ADA violations alleged. *See Romero*, 580 F. Supp. 3d at 16; *see also NutCo, Inc.*, 2022 WL 846896, at *5–6 (holding that defendant "is within the reach of New York's long-arm statute" because defendant's website allowed "for the purchase and exchange of goods in New York" and plaintiff "attempted to access the [w]ebsite to make a purchase"). I find that Defendant has established that there is a statutory basis for personal jurisdiction based on New York's long-arm statute.

I turn next to due process, which requires that a defendant have "sufficient minimum contacts with the forum" to justify a court's exercise of personal jurisdiction, such that the "assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir.

11

2016) (internal quotation marks omitted). "The requisite minimum contacts analysis overlaps significantly with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State." *Quezada*, 2021 WL 5827437, at *7 (internal quotation marks omitted). As I previously established, because its contacts with New York through the Website are purposeful and related to the ADA violations alleged in Plaintiff's Amended Complaint, Defendant has sufficient minimum contacts with the forum state under New York's long-arm statute. I find that these contacts also meet the requirements of due process. *See id.* I therefore find that the exercise of personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1) would have been proper in this case, defeating Defendant's argument that lack of personal jurisdiction rendered this lawsuit frivolous.

c. Lack of Intent to Litigate Merits

Defendant argues that "there is substantial evidence that Plaintiff here had no intention of litigating the merits of his ADA claim against anyone." (Def. Mem. at 7.) Although Plaintiff's alleged lack of intent to litigate the merits of his claim is not an independent reason to award attorney's fees, I will analyze it insofar as it sheds light on whether Plaintiff's claims are frivolous, unreasonable, or groundless. Defendant points to the fact that Plaintiff filed 146 cases, most of which settled quickly. For the cases that did not quickly settle, Plaintiff often dismissed the lawsuit or declined to pursue default judgment against a non-appearing defendant. In keeping with this pattern, Plaintiff dismissed this action after the motion to dismiss briefing was complete.

None of these arguments persuade me that Plaintiff filed a frivolous ADA claim and did not intend to litigate it. Although it is true that many ADA cases settle quite quickly, Plaintiff here filed his Amended Complaint after the initial motion to dismiss and opposed Defendant's

12

renewed motion to dismiss, demonstrating an investment of time and resources into litigating the merits of the action. Plaintiff's counsel submitted a declaration stating that after the motion to dismiss briefing was complete, the Second Circuit issued a decision in *Calcano v. Swarovski North America Limited.*, 36 F.4th 68, 77 (2d Cir. 2022), which caused counsel to be concerned that some of Plaintiff's lawsuits "might be deemed insufficiently pled in light of the Second Circuit's pronouncements." (Doc. 44 ("Mizrahi Decl.") ¶ 4.) Given *Calcano* and other strategic considerations, Plaintiff proceeded to voluntarily dismiss some of his then-pending ADA cases. (*Id.*) On July 21, 2022, Peter Brann, one of Defendant's attorneys, emailed Joseph Mizrahi, Plaintiff's counsel, stating: "Although I would like to litigate this matter, in light of your recent dismissals of what appear to me to be similar cases, I owe it to the client to inquire whether you would agree also to dismiss the case against Tackle Direct." (*Id.*) On August 11, 2022, Plaintiff dismissed this action with prejudice. (Doc. 32.)

      Defendant does not explain why Plaintiff's explanation for dismissing his claims—the issuance of the *Calcano* decision by the Second Circuit—should not be credited. *Calcano* affirmed the dismissal of five ADA lawsuits brought by visually impaired individuals, clarifying that conclusory allegations of intent and opportunity to return to physical stores to purchase Braille gift cards did not suffice to confer standing. 36 F.4th at 75–78. Although *Calcano* did not explicitly disavow the line of cases establishing a different standard for intent to return to online retailers, *see supra* Section III.A.2.a, it underscored the rigor of the standing inquiry and noted that the copy-and-paste nature of many ADA pleadings undermines the plausibility of genuine injury. 36 F.4th at 77 ("Judicial experience and common sense suggest that the errors, oddities, and omissions in the complaints are a result of their mass production, and they render each Plaintiff's cookie-cutter assertion of standing implausible." (internal quotation marks

13

omitted and alteration adopted)). As Defendant repeatedly points out, Plaintiff had many similar ADA lawsuits pending, so it stands to reason that Plaintiff would reassess some of his claims post-*Calcano*, given the scrutiny the decision all but guaranteed for new and pending ADA claims in this Circuit. Furthermore, counsel for Defendant reached out to Plaintiff's counsel to request dismissal just a few weeks before Plaintiff dismissed the case. It is difficult to square the idea that this was a bad-faith dismissal by Plaintiff with the fact that counsel for Defendant sought that very same outcome on behalf of his client.

Finally, Defendant makes much of Plaintiff being a serial ADA claimant. Indeed, *Calcano* indicates that serial litigation can be relevant where it sheds light on the pending litigation, but Defendant here fails to explain why Plaintiff's practice of bringing ADA lawsuits show that Plaintiff's claims in this case were frivolous, unreasonable, or groundless. Absent making that connection, Plaintiff's behavior outside of this case does not have any bearing on the attorney's fees inquiry. Because I find that Plaintiff's claims were not frivolous, unreasonable, or groundless, I deny Defendant's request for attorney's fees and costs under 42 U.S.C. § 12205.

### B.     *Sanctions*

Defendant seeks attorneys' fees and costs from Plaintiff's counsel as sanctions under the court's inherent power and 28 U.S.C. § 1927. "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (citations omitted). As to the first element, "[a] claim is colorable when it reasonably *might* be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Id.* at 337. The second element, bad faith, "may be inferred only if actions are so

14

completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* at 336 (internal quotation marks omitted). Both elements "must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Even once this showing has been made, the decision concerning whether to impose sanctions is ultimately left to the court's discretion. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325–26 (2d Cir. 2004).

Courts may also impose sanctions under 28 U.S.C. § 1927, which provides that attorneys' fees and costs may be personally assessed against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." "In practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). The only entity that Defendant seeks sanctions against here is Plaintiff's counsel. (*See* Def. Mem. at 10–11.) Thus, the analysis of the propriety of sanctions under § 1927 merges with the court's inherent power analysis.

### 1. Colorability

I first examine whether there is a colorable factual and legal basis for Plaintiff's claims. Although Defendant did not clearly analyze the issue of colorability in its attorney's fees briefing, "sanctions [must] be weighed in light of the full record in the case." *Masi v. Steely*, 242 F.R.D. 278, 285 (S.D.N.Y. 2007) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976)). Having already determined that Plaintiff had a colorable argument as to

15

standing and personal jurisdiction, *see supra* Section III.A.2, I turn to the merits issues raised by Defendant in its motion to dismiss briefing.

Defendant argues that Plaintiff's Amended Complaint does not state that he requested accommodations for his disability. (MTD 17–18.) "Notice of the alleged disability . . . is an assumed prerequisite of a Title III claim for failure to make reasonable accommodations." *Castillo v. Hudson Theater, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (internal quotation marks omitted). "Reason dictates that in order for a defendant to be liable for discrimination 'on the basis of disability,' the defendant must have had adequate knowledge of the plaintiff's disability." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012) (citing 42 U.S.C. § 12182(a)). Plaintiff avers that only the third basis for a disability discrimination claim—failure to make a reasonable accommodation—requires that a plaintiff request an accommodation, and that he pled the other two bases, intentional discrimination and disparate impact, in his Amended Complaint. (MTD Opp. 20–21 (citing 42 U.S.C. §12182(b)(2)(A)(ii).) Plaintiff's argument fails, for the Amended Complaint does not plausibly state a claim under the two sections of the ADA that do not require a plaintiff to request an accommodation, and Plaintiff does not allege he requested an accommodation. Only twice does Plaintiff refer to intentional discrimination or disparate impact in his Amended Complaint:

> 40. Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in – or benefit from – the products, services, facilities, privileges, advantages, or accommodations of an entity.

> 41. Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

16

(Am. Compl. ¶¶ 40–41.)  Nowhere in the Amended Complaint does Plaintiff explain how Defendant intentionally discriminated against him based on his visual impairment, nor does he describe any disparate impact of such discrimination.  These allegations are nothing more than "a formulaic recitation of the elements of a cause of action" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," long recognized as insufficient to state a valid claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Circuit has found similar allegations insufficient to state a claim in the ADA context as well.  *See*, *e.g.*, *Smith v. NYCHA*, 410 F. App'x. 404, 406 (2d Cir. 2011) (summary order) (plaintiff's failure to allege that discriminatory animus was a factor fails to state a claim for disparate treatment under the ADA); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (plaintiff must establish a significantly adverse or disproportionate impact on a specific class of individuals to state a claim for disparate impact), *superseded by regulation on other grounds*.  Plaintiff cannot point to its recitations of the law, completely devoid of any type of factual support, to show that he was not required to request an accommodation to assert his ADA claim for Defendant's failure to accommodate him.  Plaintiff's failure to allege any facts supporting a core element of his ADA claim renders it not colorable.

### 2. Bad Faith

Despite the factual deficiencies in Plaintiff's Amended Complaint, I do not find that Plaintiff's counsel's actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  *Schlaifer Nance*, 194 F.3d at 336 (internal quotation marks omitted).  Defendant's primary evidence of Plaintiff's counsel's bad faith is his pattern of conduct of "fil[ing] over 1,000 website accessibility cases in this district . . . [with] little, if any, evidence that any of these cases were ever litigated." (Def. Mem. at 12.)  In

turn, Plaintiff points out that sanctions can only be imposed for counsel's conduct in the instant case, and contests that I can consider counsel's alleged conduct in other cases. (*See* Pl. Opp. at 20.)

Defendant concedes that sanctions can only be imposed for conduct in this case, (*see* Def. Mem. at 12), yet fails to make the threshold showing that there was bad faith conduct in this case that would enable me to reach the issue of whether and how to consider "the broader context of Plaintiff['s] transparent cut-and-paste and fill-in-the-blank pleadings," *Calcano*, 36 F.4th at 77 (discussing standing). Defendant's only allegation specific to this case is that "plaintiff's counsel is responsible for continuing to pursue this case after it became obviously untenable following TackleDirect's motion to dismiss the original complaint." (Def. Mem. at 12.) Defendant does not explain why its motion to dismiss rendered Plaintiff's claims "obviously untenable." To the contrary, Defendant admits that Plaintiff's Amended Complaint added allegations to support standing, which defeats any argument that the amendment was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay." *Schlaifer Nance*, 194 F.3d at 336 (internal quotation marks omitted). In short, Defendant's motion falls short of supplying the "high degree of specificity in the factual findings" necessary to support a finding of bad faith. *Wolters Kluwer*, 564 F.3d at 114. Therefore, I decline to impose sanctions against Plaintiff's counsel for his conduct in this case.

## IV. **Conclusion**

For the foregoing reasons, Defendant's motion for attorney's fees and sanctions is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 33.

SO ORDERED.

Dated: March 6, 2025
      New York, New York

_____
Vernon S. Broderick
United States District Judge